STATE LIBRARY *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 14415)

CITY OF NORWICH ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
(AC 14416)

O'Connell, C. J., and Landau and Spear, Js.

Argued December 15, 1997—officially released September 22, 1998

*Victor Perpetua*, with whom, on the brief, were *Catherine Wassel-Nasto*, commission counsel, and *Mitchell W. Pearlman*, general counsel, for the appellant (named defendant).

*Shelley G. Partridge*, with whom, on the brief, were *Jane Richardson* and *James C. McGuire*, for the appellants (defendant Maria T. Hileman et al.).

*Linsley J. Barbato*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Ralph E. Urban* and *Bernard F. McGovern, Jr.*, assistant attorneys general, for the appellee (plaintiff in the first case).

*Marc S. Mandell*, for the appellees (plaintiffs in the second case).

*Jeffrey F. Gostyla* filed a brief for Connecticut Police Chiefs Association, as amicus curiae.

SPEAR, J. This case comes to us on remand from our Supreme Court.[1] The principal issue that remains is whether the contract clause of the federal constitution[2] prohibits the freedom of information commission (commission) from requiring the disclosure of the transcripts of hearings that were conducted in 1964 regarding the activities of members of the Norwich police department, where a 1973 agreement between the plaintiffs, the Connecticut State Library (library) and the city of Norwich (city), provides that the transcripts be sealed for fifty years. We conclude that the contract clause would be violated if the Freedom of Information Act (General Statutes § 1-18a et seq.)[3] was applied to require the disclosure of these transcripts. Accordingly, we affirm the judgments of the trial court.

There is no dispute about the facts. The defendant Maria T. Hileman, a reporter for the New London Day newspaper (Day), requested that the library release the transcripts of testimony taken during the 1964 investigation of the Norwich police department. The Norwich

---

[1] In *State Library* v. *Freedom of Information Commission*, 41 Conn. App. 641, 677 A.2d 470 (1996), rev'd, 240 Conn. 824, 694 A.2d 1235 (1997), we determined that the trial court's failure to take evidence as to the plaintiffs' claims of aggrievement deprived the court of jurisdiction over the plaintiffs' appeals. The Supreme Court reversed our decision in *State Library* v. *Freedom of Information Commission*, 240 Conn. 824, 694 A.2d 1235 (1997), concluding that the record sufficiently established that the plaintiffs were aggrieved. Thus, there was no need for the plaintiffs to put on evidence of aggrievement.

[2] The constitution of the United States, article one, § 10, provides in relevant part: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ."

[3] General Statutes § 1-19 provides in relevant part: "(a) Except as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records . . . ."

city council adopted a resolution on March 7, 1966, that the transcripts of the 1964 hearings should be retained by the city clerk until December 7, 1971, at which time they would be destroyed. When approval for the destruction of the transcripts was subsequently sought, the state archivist and the administrator of public records determined that the transcripts had historical value and should be permanently retained at the library. Thereafter, the city and the public records administrator entered into the subject agreement. The library refused to release the transcripts because of the 1973 agreement, which provided that the library would store the transcripts and prevent their disclosure for a period of fifty years.

Hileman and the Day filed a complaint with the commission. The commission granted intervenor status to both the city and the Norwich police department, and also granted party status to Richard Abele and James McGeowan. After a hearing, the commission found that "[a]pproximately fifty-four individuals were called to testify before the [Norwich city council] and were questioned about a range of topics concerning the [Norwich police department] including: on and off-duty conduct of Norwich police officers, the administration of the [Norwich police department], the handling of police benevolent funds, whether there was improper use of firearms and keys to public buildings, and whether [the Norwich police department's] instruction/training were up-to-date. . . . It is also found that the state's attorney's office took the position that the proper investigatory agent was the city of Norwich and not its own office due to the administrative nature of the problems then allegedly plaguing the [Norwich police department]."

In ordering disclosure, however, the commission stated that "[d]ue to the unique circumstances of this case and the compelling testimony of Messrs. Abele

and McGeowan, this commission declines to order disclosure of the content of the testimony of Messrs. Abele and McGeowan. Such testimony may be redacted prior to disclosure as ordered in paragraph one of the order . . . ."

The commission also ordered that "the [library] may redact all references to the private affairs of personally identifiable individuals, including references to their marital status, religion, family members and personal financial matters, including any matter that does not relate to the operations of the [Norwich police department]."

The commission dismissed the plaintiff's constitutional claim that disclosure of the transcripts would impair the obligation of the contract between the city and the library in violation of the contract clause. The commission concluded that the respondent "failed to establish that: (a) the contract clause applies under the facts of this case, or (b) prior to the passage of the [Freedom of Information] Act, public agencies could have contracted to be, in effect, exempt from the provisions thereof."

The commission noted in reaching its conclusions that "the record contains no evidence to indicate that either the city clerk or [the library] would be prejudiced by an order of disclosure of the transcripts. Furthermore, at no time has either party had any financial obligation under the subject agreement. This commission also notes that legislation reasonable and necessary to serve important public interests may pass constitutional muster."

The library, the city, Abele and McGeowan appealed to the Superior Court from the commission's decision. The trial court found that the commission's order violated the contract clause of the United States constitution because it nullified the contract between the library

and the city.[4] The trial court sustained the appeals and ordered that the transcripts remain under seal as provided by the agreement. The commission, Hileman and the Day then appealed to this court.

The defendants claim that (1) the trial court failed to adhere to the proper standard of review because it (a) substituted its judgment for that of the commission, (b) failed to give proper deference to the commission's construction of the Freedom of Information Act and (c) failed to hold the plaintiffs to their burden of proving that the records are exempt from disclosure. The defendants also claim that (2) the trial court improperly invoked the contract clause of the United States constitution because there was no financial consideration here and, therefore, there was no contract and, even if there was a contract, the contract clause does not apply because no property interests are involved, and (3) there was no substantial impairment of the contract because of the commission's redaction order. We disagree with all of the claims.

I

A

The trial court reviewed the actions of the commission pursuant to General Statutes § 4-183 (j), the relevant portion of which provides that on appeal "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions

---

[4] The trial court also stated that the commission's order nullified the contract "between Abele and [the city], the contract between McGeowan and [the city], and the contracts made between others who testified and [the city]." The commission made no findings that such contracts existed.

are: (1) In violation of *constitutional* or statutory provisions . . . ." (Emphasis added.)

The defendants claim that the trial court failed to adhere to the proper standard of review because it substituted its judgment for that of the commission. In making that claim, the defendants do not identify any facts that supposedly were found by the trial court.

Although the trial court stated that "[t]he [commission] made no finding of fact as to the legality or propriety of the special committee's conduct of the investigation," the trial court did not purport to make such findings. The court also noted that "[t]he *testimony* before the [commission] indicates that the 1964 Norwich city council proceeding in question operated contrary to constitutionally mandated procedural and substantive due process safeguards; while the Norwich city council had authority to conduct the investigation, it was done in an illegal manner." (Emphasis added.) We conclude that the trial court was merely referring to testimony that was given. The trial court also stated that "[t]he [commission] made no finding of fact with regard to any agreement or contract between Abele or McGeowan and the Norwich city council and the effect any such agreement or contract would have on the agreement between the [library] and [the city of] Norwich." We construe that statement to be an observation by the trial court with respect to the commission's failure to find a fact. The statement did not, in and of itself, constitute fact-finding by the court. Moreover, the trial court's statement that there was uncontroverted testimony from Abele and McGeowan that they relied on promises from the city to keep their testimony confidential was, again, only a reference to testimony and not fact-finding.

In its discussion, the trial court did refer to certain contracts other than the 1973 agreement that is at issue

here.[5] The commission made no mention of those other contracts. Even if we conclude that reference to those other contracts constituted improper fact-finding, the defendants fail to show how they were prejudiced or affected in any way with respect to the contract at issue.

We conclude that although the trial court referenced certain testimony and the failure of the commission to find certain facts, it did not substitute its judgment for that of the commission.

B

The trial court did not agree with the commission's legal conclusions regarding the application of the contract clause of the United States constitution to this case. The trial court, however, was not required to give deference to the agency's decision with respect to this question of law. The trial court had every right to substitute its judgment for that of the agency in considering whether the contract clause applied and was, in fact, violated. General Statutes § 4-183 (j) (1).

Our Supreme Court has held, in the context of a workers' compensation appeal, that "[w]here . . . the appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. See *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995) (state agency not entitled to special deference when its construction of statute has not undergone previous judicial scrutiny)." *Doe* v. *Stamford*, 241 Conn. 692, 697, 699 A.2d 52 (1997). The reasoning in *Doe* applies here to the agency's construction of the contract clause of the United States constitution.

Because we conclude that the trial court was not required to defer to the agency's construction of the

[5] *See footnote 4.*

constitutional provision, the defendants' claim is without merit.

## C

The defendants next claim that the trial court failed to hold the plaintiffs to their burden of proving an exception to disclosure. Because the trial court sustained the appeal on the ground that application of the Freedom of Information Act under the circumstances here would violate the contract clause of the United States constitution, discussed previously, there is no need to address this claim.

## II

Asserting that there was no consideration, the defendants claim that there was no contract here and, therefore, there could be no violation of the contract clause. They cite no authority and provide no analysis for their proposition, articulated at oral argument, that only an exchange involving money can constitute legal consideration.[6] In its brief, the commission footnotes the fact that the city was denied permission to destroy the transcripts and that the denial was not conditioned on either the storage or the sealing of the records. The commission provides no analysis, however, as to why this demonstrates that there was no consideration for the 1973 agreement.

The defendants further assert that even if a contract existed, it did not involve property interests and, therefore, the contract clause does not apply here. In support

---

[6] "The doctrine of consideration is of course fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable. In defining the elements of the rule, we have stated that consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . An exchange of promises is sufficient consideration to support a contract." (Citations omitted; internal quotation marks omitted.) *Osborne* v. *Locke Steel Chain Co.*, 153 Conn. 527, 530–31, 218 A.2d 526 (1966).

of this proposition, the plaintiffs cite *United States Trust Co. of New York* v. *New Jersey*, 431 U.S. 1, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977), and R. Hale, "The Supreme Court and the Contract Clause," 57 Harv. L. Rev. 512 (1944). The *United States Trust Co. of New York* case states that "[c]ontract rights are a form of property" but makes no statement that only contracts that involve property rights are protected by the contract clause. *United States Trust Co. of New York* v. *New Jersey*, supra, 19 n.16. The defendants offer no analysis to support their proposition that the contract clause is limited to only those cases involving property interests.

We consider both of those claims to be inadequately briefed. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). Our Supreme Court has stated that "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief." *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997).

We therefore decline to review the defendants' claims that there was no contract because of a lack of consideration and that the contract clause protects only contracts that involve property interests.

### III

We now turn to the question of whether the trial court properly concluded that applying the Freedom of Information Act to the subject contract would violate the contract clause of the United States constitution. Before doing so, we must address a threshold consideration. The plaintiffs do not claim that the act is unconstitutional; rather, they assert that applying it to this contract under these circumstances would violate the

contract clause. The defendants make no claim that the act cannot be challenged as being unconstitutional in its application. We do not address the constitutionality of the act, but decide only that it would be improper to apply it here in light of the contract clause.

General Statutes § 1-3 provides: "If any provision of any act passed by the General Assembly or its *application* to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of such act." (Emphasis added.)

Our Supreme Court has said that "[t]o determine whether legislation is valid as to one and invalid as to another is consonant with principles long established. . . . By General Statutes § 1-3 the legislature has shown its intention that there is to be a presumption of separability of the provisions and of the *applications* of statutes. . . . A statute may operate in a manner consistent with constitutional requirements when applied to one set of circumstances, although as to another it may produce a result which makes its operation unconstitutional." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Menillo*, 171 Conn. 141, 145–46, 368 A.2d 136 (1976), quoting *State* v. *Sul*, 146 Conn. 78, 81, 147 A.2d 686 (1958). We address the applicability of the act only to the circumstances of this case.

"Although the language of the Contract Clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State to safeguard the vital interests of its people." (Internal quotation marks omitted.) *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983). The court in *Energy Reserves Group, Inc.*, set out a three part test to determine whether the contract clause has been violated. First, the "threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of

a contractual relationship." (Internal quotation marks omitted.) Id., 411. Second, "[i]f the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation . . . . The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." (Citations omitted.) Id., 411–12. Third, once "a legitimate public purpose has been identified, the next inquiry is whether the adjustment of the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." (Internal quotation marks omitted.) Id., 412.

A

The first part of the three part test of *Energy Reserves Group, Inc.*, is whether the state law poses a substantial impairment of the contract. "This [substantial impairment] inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp.* v. *Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 117 L. Ed. 2d 328 (1992). We conclude, pursuant to our discussion in part II of this opinion, that there was a contractual relationship between the library and the city. Except for the claimed lack of consideration, that contractual relationship has not been challenged by the defendants.

The second component of *General Motors Corp.* v. *Romein*, supra, 503 U.S. 186, is also satisfied because applying the Freedom of Information Act to this contract would definitely affect and impair the contractual relationship. The contract's purposes are to preserve the records indefinitely and to protect their confidentiality for a period of fifty years. Despite the commission's redaction order, the confidentiality aspect of the contract would be impaired severely by applying the act

in this case. We cannot be certain that the redaction that is allowed by the commission's order will eliminate or even lessen the severity of that impairment. Those redactions would apply only to private matters concerning those particular individuals. The provisions of the contract provide for much broader protection. No disclosure is allowed because as the agreement states, "disclosure of the contents of the transcripts would adversely affect the reputation or character of persons now living . . . ." Moreover, the line between the private and public affairs of a public servant, such as a police officer, often may be difficult to ascertain, and reasonable people could easily disagree as to precisely where such a line should be drawn.

We also note that the commission's language in its order is facially permissive. The order states that the library *may* redact certain references. Even if the word may is construed to require the library to redact the references that are mentioned in the order, it is likely that disagreements would arise over what should be redacted. Such disagreements could result in litigation. Because, as we have noted, reasonable minds could disagree, disclosure could be ordered that would adversely affect now protected reputations.

Additionally, as the trial court pointed out, the contract complies with the relevant state statutes that were in effect at the time that the contract was made. The defendants do not attack that conclusion in their briefs. "[W]e must be mindful that the contracts clause is designed to enable individuals to order their personal and business affairs according to their particular needs and interests. Once arranged, those rights and obligations are binding under the law, and the parties are entitled to rely on them. . . . The obligations protected by the clause [include] not only the express terms [of the contract] but also the contemporaneous state law pertaining to interpretation and enforcement." (Citation

omitted; internal quotation marks omitted.) *Whirlpool Corp.* v. *Ritter*, 929 F.2d 1318, 1322 (8th Cir. 1991).

The last prong of *General Motors Corp.* v. *Romein*, supra, 503 U.S. 186, is the first inquiry under *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 400: Is the impairment substantial? "The Supreme Court, however, has provided little specific guidance as to what constitutes a 'substantial' contract impairment." *Baltimore Teachers Union* v. *Mayor & City Council of Baltimore*, 6 F.3d 1012, 1017 (4th Cir. 1993), cert. denied, 510 U.S. 1141, 114 S. Ct. 1127, 127 L. Ed. 2d 435 (1994). It appears that the Supreme Court has assumed "that an impairment is substantial at least where the right abridged was one that induced the parties to contract in the first place." Id. If the act were applied to this contract, confidentiality, a major inducement for the original making of the contract, would be severely affected. That the redaction order offers some protection against improper disclosure is not dispositive because "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment." *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 411. We conclude that the impairment is substantial.

The second inquiry under *Energy Reserves Group, Inc.*, whether the act has a legitimate public purpose, requires little discussion. As the trial court appropriately noted, the act "expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 328, 435 A.2d 353 (1980). While we acknowledge the worthwhile public purposes that the act serves, we nonetheless conclude that the rights of the contracting parties should prevail under the circumstances here.

The final inquiry under *Energy Reserves Group, Inc.*, is whether applying the act under these circumstances would be based on "reasonable conditions and [be] of

a character appropriate to the public purpose justifying [the legislation's] adoption." (Internal quotation marks omitted.) *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.*, supra, 459 U.S. 412. It is important to keep in mind that this investigation took place in 1964, and a public report was issued on January 4, 1965. The report concluded that the chief of police "has not taken the firm administration and disciplinary measures needed to [correct the situation of those policemen who do no credit to the city]." There are other negative comments in the report concerning the chief's lack of administrative and managerial abilities that allowed certain officers to take advantage of him.

The report also disclosed that alcohol abuse might have been a problem with a "small segment of the department" and that "keys to certain commercial buildings in Norwich are kept in police headquarters hanging on hooks in the open so that it was possible for an unscrupulous person to duplicate them." Other disclosures included that the chief failed to keep his officers properly informed and to maintain good morale, the rules and regulations needed updating, there was no regular training program for new police officers, police coverage of the city was not adequate, there was a shortage of street sergeants and the detective division was understaffed.

The report further noted that operation of the department was not secure in that reporters "have been allowed to read police teletype information as a matter of course . . . and attorneys defending persons arrested have been aided in the preparation of their cases beyond any requirement of the law by being given access to the arresting officer's report and other material." There was also preferential treatment of certain officers that caused a decline in morale. The concluding paragraph of the report noted that three policemen had refused to respond to questions regarding Police

Benevolent Association activities. The committee concluded that officers "with nothing to conceal would not hide behind an attorney's advice when asked questions about their off duty activities."

We may reasonably assume that during the nearly thirty years between the investigation report and the commission's order, those matters were addressed in some fashion. It is highly unlikely that disclosure of the details of the testimony now would advance the cause of open government that was envisioned by the act and referred to in *Wilson* v. *Freedom of Information Commission*, supra, 181 Conn. 328. The other policy cited in *Wilson* deals with public access to the records. Such access to these thirty-four year old records will be delayed, but not denied, by enforcing the fifty year sealing provision that was specified in the contract. The historical value of the records will not be significantly affected by this additional passage of time. Disclosure, however, will destroy a major purpose of the contract. Such an application of the act is not reasonable or appropriate under the circumstances here and would violate the contract clause of the United States constitution.

The judgments are affirmed.

In this opinion the other judges concurred.