## WILLIAM H. WILSON v. PAUL HRYNIEWICZ ET AL.
### (AC 16643)

Schaller, Spear and Dupont, Js.

---

628

Argued September 23, 1998—officially released February 2, 1999

*John M. Wyzik*, with whom was *Anthony M. Mac-Leod*, for the appellants (defendants).

*Neil F. Murphy, Jr.*, with whom was *P. Jo Anne Burgh*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. The defendants, Paul Hryniewicz and West Service Corporation, are indebted to the plaintiff as a

result of a judgment in the original amount of $525,000. The plaintiff obtained a postjudgment order for a public sale of Hryniewicz' shares of stock in Mountain Laurel Realty, Inc. (Mountain Laurel). The trial court thereafter approved the sale for $200,000 and ordered Hryniewicz to transfer the shares of stock to the plaintiff, who was the successful bidder.[1]

The defendants appeal from the trial court's order and claim that the trial court improperly approved the sale because (1) the plaintiff offered no evidence to demonstrate that the sale was commercially reasonable and the court failed to find such commercial reasonableness, (2) a proceeding was pending before the department of public utilities (department) in which one of the parties claimed that Mountain Laurel was a publicly regulated water company with attendant restrictions on the transfer of its stock and (3) a petition for a new trial was pending in the trial court and should have been considered. We find the claims to be without merit and affirm the judgment of the trial court.

I

The defendants' first claim, relating to commercial reasonableness, involves the trial court's fact-finding function and, therefore, our standard of review is whether the findings are clearly erroneous. "Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when

---

[1] At the hearing on the motion to approve the sale of the subject stock, the plaintiff's attorney advised the trial court that the judgment plus interest and attorney's fees totaled approximately $1.02 million.

although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Helen B.*, 50 Conn. App. 818, 829, 719 A.2d 907 (1998).

The defendants present three arguments in support of this claim. First, the defendants assert that the trial court's failure to make a finding as to commercial reasonableness mandates a new hearing. Second, they contend that although the plaintiff attached exhibits to the motion to approve the sale, no evidence was offered and, therefore, the trial court had nothing on which it could have premised a finding of commercial reasonableness. Third, the defendants argue that Hryniewicz offered the only evidence as to the value of the stock and his testimony that the stock was worth over $2,000,000 demonstrated that the sale price of $200,000 was commercially unreasonable. We address and reject these arguments in turn.

A

We note that the trial court made no express finding as to whether the sale was commercially reasonable. The motion for the order of sale requested that Hryniewicz' shares of stock in Mountain Laurel "be sold at a public sale in a *commercially reasonable manner* pursuant to § 52-356a of the Connecticut General Statutes." (Emphasis added.)[2] In granting the motion, the

[2] General Statutes § 52-356a (a) (1) provides: "On application of a judgment creditor or his attorney, stating that a judgment remains unsatisfied and the amount due thereon, and subject to the expiration of any stay of enforcement and expiration of any right of appeal, the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the nonexempt personal property of the judgment debtor other than debts due from a banking institution or earnings. The application shall be accompanied by a fee of ten dollars payable to the clerk of the court for the administrative costs of complying with the provisions of this section which fee may be recoverable by the judgment creditor as a taxable cost of the action. In the case of a consumer judgment, the application shall

trial court set the date, time and place of the sale, required that the sale be advertised in the Hartford Courant fourteen and seven days prior to the sale, provided that the sheriff follow the notice requirements of General Statutes § 52-356a (2) and (3), set the deposit at $50,000 and ordered the sheriff to make a return of his actions with respect to the sale and to bring the proceeds of the sale into court.

Implicit in the trial court's granting of the motion is an order that the sale be conducted in a commercially reasonable manner as the requirement of commercial reasonableness was an integral part of the order sought by the motion. See *Fiaschetti* v. *Nash Engineering Co.*, 47 Conn. App. 443, 448, 706 A.2d 476, cert. denied, 244 Conn. 906, 714 A.2d 1 (1998) (where motion unopposed, it can be assumed that in granting motion, court granted each request of moving party). The trial court's subsequent approval of the sale implies that the trial court found both that the sale was conducted as ordered and that the sale was in fact commercially reasonable. Therefore, the defendants are not entitled to relief based on their claim that the trial court failed to find that

indicate whether, pursuant to an instalment payment order under subsection (b) of section 52-356d, the court has entered a stay of execution and, if such a stay was entered, shall contain a statement of the judgment creditor or his attorney as to the debtor's default on payments. The execution shall be directed to any levying officer."

General Statutes § 52-356a (b) (1) provides: "The judgment debtor's interest in personal property levied on pursuant to an execution, other than any money so obtained, shall be sold by the levying officer, or by an indifferent person deputed to act on his behalf, or by such other levying officer as the court in which the money judgment was rendered directs, in accordance with subdivisions (2) and (3) of this subsection. The sale shall be held at such time and place and in such manner as is commercially reasonable. The sale shall be subject to, and shall not affect, any secured interests, including any such liens, that are senior in right to the execution. No sale may be made to any levying officer, or to his agent or associate. The property shall be present and within view of those attending the sale unless otherwise ordered by the court."

the sale was conducted in a commercially reasonable manner.

### B

The defendants claim that even if a finding of commercial reasonableness is implicit in the trial court's order, the plaintiff presented no evidence on which such a finding could be based. He asserts that, pursuant to this court's holding in *Streicher* v. *Resch*, 20 Conn. App. 714, 717, 570 A.2d 230 (1990), the attachments to the plaintiff's motion for approval of the sale could not be considered because they were not introduced into evidence. The attachments consisted of (1) a copy of the order of sale, (2) an affidavit of publication of notice as ordered by the court, (3) copies of the subject stock certificates and (4) the sheriff's return that describes all of the details of the sale.

We disagree with the defendants' view that *Streicher* holds that such attachments can never be considered unless introduced into evidence. We said in *Streicher*: "Exhibits attached to a complaint can be considered by the factfinder if the defendant, through his answer or other responsive pleading, admits to the factual allegations contained therein so that the pleading constitutes a judicial admission. . . . Any allegation that is denied by the defendant, however, must be proven by the plaintiff."(Citations omitted.) Id., 716.

Although the motion here is not a complaint, we discern no reason why the rationale of *Streicher* should not apply. The defendants withdrew their objection to the motion for the order of sale and agreed to the terms as ordered by the trial court. By withdrawing the objection and agreeing to the terms of the sale, the defendants conceded that the sale as ordered was commercially reasonable. The defendants did not object to the motion for approval of the sale except as to the reasonableness of the sale price. Hryniewicz testified briefly as to his

opinion of the value of the stock at the hearing. The defendants' primary claim at that hearing was that the trial court should not rule pending the outcome of a proceeding before the department. They never contested the validity of the attachments or challenged the conduct of the sale in any way. Their claim as to commercial reasonableness was first raised during oral argument to the trial court, admittedly as an afterthought. We conclude that absent any objection to the motion for approval of the sale except as to the sale price, the trial court properly took the allegations as admitted and properly considered the attached exhibits.

## C

The defendants' last claim with respect to this issue is that the lack of any evidence from the plaintiff as to the value, coupled with Hryniewicz' testimony that the stock was worth $2 million makes the $200,000 sale price commercially unreasonable.[3] As we have previously discussed, the trial court properly considered the exhibits that were attached to the motion on all aspects of the sale, including the reasonableness of the price. Even though Hryniewicz owned the stock, the court was not required to accept his opinion of its value. It is well established that "[t]he trier of fact may accept or reject the testimony of any witness. *State* v. *Cooley*, 24 Conn. App. 489, [490–91], 589 A.2d 377, cert. denied, 219 Conn. 905, 593 A.2d 131 (1991). The trier can, as well, decide what—all, none, or some—of a witness' testimony to accept or reject. 5 Connecticut Practice, D. Borden & L. Orland, Criminal Jury Instructions (1986) § 3.2. *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376 [cert. denied, 519 U.S. 1044, 117 S. Ct. 617,

---

[3] The defendant's opinion of value was based on the number of homes to which water could be supplied in the event there was continuous development of subdivisions in the area.

136 L. Ed. 2d 541] (1996)." (Internal quotation marks omitted.) *State* v. *Knight*, 50 Conn. App. 109, 113, 717 A.2d 274 (1998). Upon review of all of the evidence, we conclude that the trial court's approval of all aspects of the sale, including the sale price, was supported by the evidence and was not clearly erroneous.

II

The defendants next claim that the trial court improperly refused to stay the order to transfer the stock even though an unrelated proceeding was pending before the department in which one of the parties claimed that Mountain Laurel was a publicly regulated water company with attendant restrictions on the transfer of its stock. Specifically, the defendants argue that if it is determined in that unrelated proceeding that Mountain Laurel is a "public service company" under General Statutes § 16-1 (a) (4)[4] or a "water company" under General Statutes § 16-1 (a) (10),[5] the department would

[4] General Statutes § 16-1 (a) (4) provides: " 'Public service company' includes electric, gas, telephone, telegraph, pipeline, sewage, water and community antenna television companies, owning, leasing, maintaining, operating, managing or controlling plants or parts of plants or equipment, and all express companies having special privileges on railroads within this state, but shall not include telegraph company functions concerning intrastate money order service, towns, cities, boroughs, any municipal corporation or department thereof, whether separately incorporated or not, or a private power producer, as defined in section 16-243b . . . ."

[5] General Statutes § 16-1 (a) (10) provides: " 'Water company' includes every corporation, company, association, joint stock association, partnership or person, or lessee thereof, owning, leasing, maintaining, operating, managing or controlling any pond, lake, reservoir, stream, well or distributing plant or system employed for the purpose of supplying water to fifty or more consumers. A water company does not include homeowners, condominium associations providing water only to their members, homeowners associations providing water to customers at least eighty per cent of whom are members of such associations, a municipal waterworks system established under chapter 102, a district, metropolitan district, municipal district or special services district established under chapter 105, chapter 105a or any other general statute or any public or special act which is authorized to supply water, or any other waterworks system owned, leased, maintained, operated, managed, or controlled by any unit of local government under any general statute or any public or special act . . . ."

have jurisdiction over it and any sale of Mountain Laurel's assets or stock would then require department approval pursuant to General Statutes §§ 16-19e (a)[6] and 16-262o.[7] We conclude that this claim is without merit.

[6] General Statutes § 16-19e (a) provides: "In the exercise of its powers under the provisions of this title, the Department of Public Utility Control shall examine and regulate the transfer of existing assets and franchises, the expansion of the plant and equipment of existing public service companies, the operations and internal workings of public service companies and the establishment of the level and structure of rates in accordance with the following principles: (1) That there is a clear public need for the service being proposed or provided; (2) that the public service company shall be fully competent to provide efficient and adequate service to the public in that such company is technically, financially and managerially expert and efficient; (3) that the department and all public service companies shall perform all of their respective public responsibilities with economy, efficiency and care for the public safety, and so as to promote economic development within the state with consideration for energy and water conservation, energy efficiency and the development and utilization of renewable sources of energy and for the prudent management of the natural environment; (4) that the level and structure of rates be sufficient, but no more than sufficient, to allow public service companies to cover their operating and capital costs, to attract needed capital and to maintain their financial integrity, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable; (5) that the level and structure of rates charged customers shall reflect prudent and efficient management of the franchise operation and (6) that the rates, charges, conditions of service and categories of service of the companies not discriminate against customers which utilize renewable energy sources or cogeneration technology to meet a portion of their energy requirements."

[7] General Statutes § 16-262o provides in relevant part: "(a) The Department of Public Utility Control, in consultation with the Department of Public Health, upon a determination that the costs of improvements to and the acquisition of the water company are necessary and reasonable, shall order the acquisition of the water company by the most suitable public or private entity. In making such determination, the department shall consider: (1) The geographical proximity of the plant of the acquiring entity to the water company, (2) whether the acquiring entity has the financial, managerial and technical resources to operate the water company in a reliable and efficient manner and to provide continuous, adequate service to the persons served by the company, (3) the current rates that the acquiring entity charges its customers, and (4) any other factors the department deems relevant. . . .

"(b) Notwithstanding the provisions of any special act, the Department of Public Utility Control shall extend the franchise areas of the acquiring water company to the service area of the water company acquired pursuant to this section. . . ."

The defendants invoke the doctrine of primary jurisdiction to support their claim. "Primary jurisdiction is a doctrine used by courts to allocate initial decisionmaking responsibility between agencies and courts where such overlaps and potential for conflicts exist." (Internal quotation marks omitted.) *Second Injury Fund* v. *Lupachino*, 45 Conn. App. 324, 349, 695 A.2d 1072 (1997), citing 2 K. Davis & R. Pierce, Administrative Law Treatise (3d Ed. 1994) § 14.1, p. 271.

"It has been said that [the primary jurisdiction] doctrine 'applies where a claim is *originally cognizable* in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.' *United States* v. *Western Pacific R. Co.*, 352 U.S. 59, 63–64, 77 S. Ct. 161, 1 L. Ed. 2d 126 (1956), citing *General American Tank Car Corp.* v. *El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S. Ct. 325, 84 L. Ed. 361 (1940). . . . Stated another way, '[t]he threshold issue in determining whether [the] doctrine [of primary jurisdiction] applies is whether both the court and an agency have jurisdiction over the same issue.' *Golden Hill Paugussett Tribe of Indians* v. *Weicker*, 39 F.3d 51, 59 (2d Cir. 1994)." (Citations omitted; emphasis in original.) *Second Injury Fund* v. *Lupachino*, supra, 45 Conn. App. 348–49.

Here, the defendants argue that the trial court should have suspended its decision in this case until the distinct proceeding before the department was resolved. The defendants further assert that if, in that proceeding, it is eventually determined that Mountain Laurel is a publicly regulated water company, the Superior Court would be bound by that determination. While this assertion is true, to the present time Mountain Laurel has

never been determined to be a water company. Because Mountain Laurel is not considered a water company as defined by § 16-1 (a) (10), jurisdiction over Mountain Laurel's transactions lies with the Superior Court. Even if the department eventually determines that Mountain Laurel is a water company, Hryniewicz offers no analysis as to how his stock could be considered an asset of Mountain Laurel or why it would make a difference whether he or the plaintiff owns the stock. The resolution of the plaintiff's claim to Hryniewicz' stock in the Superior Court does not require any prior determination by the department. The trial court, therefore, had no valid reason to delay its decision making pending the outcome of the proceeding before the department and did not improperly refuse to stay the order to transfer the stock.

## III

The defendants' final claim is that the trial court improperly rendered an order for the relief requested in view of the fact that the defendants had a petition for new trial pending, and the court knew that that petition was pending and had not been tried. This issue is moot in view of our affirmance of the denial of the defendants' petition for a new trial in *Hryniewicz* v. *Wilson*, 51 Conn. App. 440, 722 A.2d 288 (1999).[8]

---

[8] In any event, the claim is inadequately briefed. See *State* v. *Rodriguez*, 44 Conn. App. 818, 823, 692 A.2d 846, cert. denied, 242 Conn. 902, 697 A.2d 363 (1997). " 'Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly.' . . . *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). Our Supreme Court has stated that '[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.' *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44-45, 699 A.2d 101 (1997)." *State Library* v. *Freedom of Information Commission*, 50 Conn. App. 491, 500, 717 A.2d 842 (1998). The defendant states the general propositions that relevant evidence "has a logical tendency to aid the trier of fact in the determination of an issue" and "the granting of a new trial vacates the former judgment." He offers no analysis as to how these principles apply here.

The judgment is affirmed.

In this opinion the other judges concurred.