LESTER SELIGSON *v.* CHARLES F. BROWER
(AC 28913)

McLachlan, Beach and Mihalakos, Js.

Argued May 30—officially released August 19, 2008

*Charles F. Brower*, pro se, the appellant (defendant).

*John J. Kelly*, for the appellee (plaintiff).

*Opinion*

BEACH, J. In this breach of contract action, the defendant, Charles F. Brower, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Lester Seligson.[1] On appeal, the defendant claims that the court improperly determined (1) that the plaintiff had performed under the contract and was entitled to payment from the defendant in the amount of $1486.65 and (2) that the defendant could not prevail on his counterclaim alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff operated a court reporting service that utilized independent contractor court reporters. The defendant and David Weiss were opposing counsel at an arbitration hearing. Weiss requested the plaintiff's court reporting services in connection with the hearing. The plaintiff sent Charles Huneke, an independent contractor court reporter, to attend the matter and to record the proceedings. On January 19, 2006, at the conclusion of the proceedings, Weiss ordered from Huneke two copies of the transcript, one for himself and one for the arbitrator. The defendant ordered one copy of the transcript for himself. Huneke informed the defendant that the transcript would be postmarked no later than two weeks from January 21, 2006.

On January 25, 2006, Huneke completed the transcript, which consisted of 561 pages. Weiss, who originally requested the plaintiff's services, was charged $5

---

[1] The complaint named "Lester Seligson, d/b/a Seligson Reporting," as the plaintiff. We note that "the use of a fictitious or assumed business name does not create a separate legal entity . . . [and that] [t]he designation [d/b/a] . . . is merely descriptive of the person or corporation who does business under some other name." (Internal quotation marks omitted.) *Bauer v. Pounds*, 61 Conn. App. 29, 36, 762 A.2d 499 (2000).

per page, plus an attendance fee of $300. The defendant's original bill was in the amount of $1486.65. Weiss expressed displeasure with his bill and informed the plaintiff that he had made an agreement with the defendant to split the cost of the transcript and demanded that his bill be revised downward. The plaintiff subsequently attempted to charge the defendant a higher fee of approximately $2200. The defendant refused to pay the additional amount.

On February 14, 2006, the plaintiff filed an action in the small claims session of the Superior Court. He claimed, inter alia, breach of contract and sought to recover $1486.65 in damages from the defendant. On February 24, 2006, the defendant filed a motion pursuant to Practice Book § 24-21 to transfer the matter to the regular docket, which motion was granted on that same date. Also on that same date, the defendant filed an answer and a counterclaim. In his counterclaim, the defendant alleged that the plaintiff's actions violated CUTPA.

On June 7, 2007, after a trial to the court, the court issued a memorandum of decision in which it found in favor of the plaintiff on his breach of contract claim. The court found that the parties entered into a contract for court reporting services. According to that contract, the plaintiff was to provide the defendant with a transcript of the arbitration proceeding, postmarked no later than two weeks from January 21, 2006, in exchange for $1486.65 from the defendant. The court found that the plaintiff performed his part of the contract by calling the defendant and attempting to give him the completed transcript on February 6, 2006. Accordingly, the court found the defendant in breach of contract and rendered judgment in favor of the plaintiff in the amount of $1486.65. The court also rendered judgment in favor of the plaintiff on the defendant's CUTPA counterclaim. This appeal followed.

## I

The defendant first claims that the court improperly concluded that the plaintiff had performed under the contract and was entitled to payment from the defendant in the amount of $1486.65.[2] We disagree.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Chiulli* v. *Zola*, 97 Conn. App. 699, 706–707, 905 A.2d 1236 (2006). "Whether there was a breach of contract is ordinarily a question of fact. . . . We review the court's findings of fact under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing

[2] In making his argument, the defendant also claims that the following factual findings made by the court are clearly erroneous: (1) the contract price was determined by the defendant's agreeing with Weiss to split the cost of the transcript, (2) the plaintiff sent the defendant a bill for a higher amount *because* the matter involved an arbitration proceeding—the defendant argues that the cause for the revision of the bills was Weiss' displeasure with his bill, (3) Huneke concluded that the proceedings were more complex than originally anticipated and therefore charged a higher amount—the defendant argues that the fact that the matter was an arbitration proceeding had nothing to do with the charges to either attorney and (4) despite evidence that a telephone call was made on January 26, 2006, and a delivery date given of January 30, 2006, the parties did not agree that time was of the essence—the defendant claims he never made a claim that time was of the essence.

There is evidence in the record to support the court's findings of performance by the plaintiff, breach of the agreement by the defendant and damages in the amount of $1486.65. The other factual findings, whether or not they are clearly erroneous, are not material to our legal conclusions with respect to the issues before us. See *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 88 Conn. App. 445, 446 n.2, 871 A.2d 373 (2005).

court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 77 Conn. App. 462, 471–72, 823 A.2d 438 (2003).

There is evidence in the record to support the court's findings of performance by the plaintiff, breach of the agreement by the defendant and damages in the amount of $1486.65.[3] Huneke testified that at the conclusion of the arbitration proceeding, the defendant ordered a copy of the transcript, for which the defendant expected to be charged, and Huneke agreed that it would be postmarked no later than two weeks from January 21, 2006. There was evidence that Huneke thereafter prepared the transcript, calculated the cost and faxed the invoice to the plaintiff, who subsequently faxed a bill in the amount of $1486.65 to the defendant on January 26, 2006. Although the plaintiff later faxed a revised bill of approximately $2200 to the defendant's office, the court found that this did not modify the original contract. The defendant does not challenge this finding. On January 27, 2006, the plaintiff spoke with a person from the defendant's office, who informed him that the defendant would not pay the revised bill but would pay the original bill of $1486.65. The defendant did not inform the plaintiff that he wanted to cancel the transcript order. The plaintiff did not indicate to the defendant that he would not be willing to accept $1486.65. On February 6, 2006, Huneke telephoned the defendant's office and informed a secretary that he had the transcripts of the arbitration hearing and was going to deliver them to the defendant's office on that day and collect the check. The court concluded that the plaintiff performed under the contract by attempting

---

[3] The defendant does not dispute that there was an agreement between the parties.

to deliver the transcript on that day.[4] We conclude that the court's finding that the defendant breached his contract with the plaintiff by failing to pay the sum of $1486.65 finds support in the record and, as such, is not clearly erroneous.

The defendant further argues, however, that the contract between the parties ceased to exist when the plaintiff attempted to charge a higher fee.[5] Implicit in the court's finding that the parties did not agree to modify the original agreement and its finding of a subsequent

[4] It was agreed that the transcript would be postmarked no later than two weeks from January 21, 2006, which would be, as noted by the court, February 4, 2006. The court found that although the transcript was not postmarked by February 4, 2006, hand delivery on February 6, 2006, would have put the transcript into the defendant's hands at the same time as if the plaintiff would have mailed the transcript on February 4, 2006. The defendant makes no claim on appeal that a February 6 hand delivery date, as opposed to a February 4 postmark date, constituted a breach of contract by the plaintiff.

[5] The defendant also maintains that on January 27, 2006, when the plaintiff called his office to inform him that the bill had been revised to a higher amount, the plaintiff committed an anticipatory breach of the original contract, which entitled the defendant to discharge his remaining duties of performance. The defendant did not assert this claim until this appeal, and, thus, we decline to address that claim. See *In re Anna Lee M.*, 104 Conn. App. 121, 124 n.2, 931 A.2d 949 ("[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." [Internal quotation marks omitted.]), cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).

"An anticipatory breach of contract occurs when the breaching party repudiates his duty before the time for performance has arrived. . . . Its effect is to allow the nonbreaching party to discharge his remaining duties of performance, and to initiate an action without having to await the time for performance. . . . The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal . . . and is largely a factual determination in each instance." (Citations omitted; internal quotation marks omitted.) *Pullman, Comley, Bradley & Reeves* v. *Tuck-It-Away, Bridgeport, Inc.*, 28 Conn. App. 460, 465, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992). We further note that the facts found by the court do not necessarily compel the conclusion that an anticipatory breach had occurred. The court made no findings with respect to the plaintiff's intent when he revised the defendant's bill to reflect a higher amount.

breach by the defendant is a finding that the contract continued to exist despite the attempted modification. We cannot say that the court's findings in this regard are clearly erroneous.

## II

The defendant next claims that the court improperly determined that he could not prevail on his counterclaim alleging a violation of CUTPA. We disagree.

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). "It is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 43, 717 A.2d 77 (1998).

"It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary

deference. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Chamlink Corp.* v. *Merritt Extruder Corp.*, 96 Conn. App. 183, 189, 899 A.2d 90 (2006).

On appeal, the defendant claims that the court improperly determined that the following conduct of the plaintiff did not amount to a CUTPA violation: (1) lying to the defendant concerning the reasons for changing the bill to reflect a higher price, (2) refusing, after January 26, 2006, to accept the originally billed amount of $1486.65, (3) berating and threatening the defendant's secretary in a February 6, 2006 telephone conversation and (4) falsely claiming in his complaint that he tendered the defendant the transcript on January 26, 2006, and that the defendant refused to pay $1486.65 for it.

The defendant cannot prevail on his argument. The court's memorandum of decision does not contain factual findings that the plaintiff lied concerning his reasons for increasing the bill, refused to accept payment of $1486.65 from the defendant, berated or threatened the defendant's secretary or filed a false complaint. "Weighing conflicting evidence is a matter solely committed to a fact finder." *Verspyck* v. *Franco*, 274 Conn. 105, 115, 874 A.2d 249 (2005). "It is well established that [t]he trier of fact may accept or reject the testimony of any witness. . . . The trier can, as well, decide what—all, none, or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *Wilson* v. *Hryniewicz*, 51 Conn. App. 627, 633, 724 A.2d 531, cert. denied, 248 Conn. 904, 731 A.2d 310 (1999). We do not retry the facts or pass on the credibility of witnesses and thus cannot conclude

that the court's finding that the defendant failed to prove a violation of CUTPA was clearly erroneous.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We express no opinion as to whether some or all of the facts claimed by the defendant would support recovery under CUTPA.