## ROGER EMERICK *v.* ROBERT KUHN ET AL.
### (AC 16412)

Lavery, Landau and Hennessy, Js.

Argued November 9, 1998—officially released April 20, 1999

*Roger Emerick*, pro se, the appellant (plaintiff).

*Felix J. Springer*, with whom, on the brief, was *Glenn W. Dowd*, for the appellees (defendants).

*Opinion*

PER CURIAM. The plaintiff, Roger Emerick,[1] appeals from the judgment rendered following a trial to the court in part[2] and to the jury in part in the plaintiff's action against the defendants, his former employer and several of its agents and employees.[3] The action arose out of what the plaintiff alleges was the defendants' wrongful termination of his at-will employment as a result of his having exercised his right to free speech during an employer sponsored forum. The defendants contend, to the contrary, that the plaintiff was laid off as part of a large scale reduction of the workforce at Hamilton Standard, a division of the defendant United Technologies Corporation (United Technologies).

On appeal, the plaintiff claims that the trial court improperly (1) granted the defendants' motion to strike those counts of the plaintiff's complaint alleging a violation of General Statutes § 31-51q and wrongful discharge, (2) charged the jury on the law of implied contract, tortious interference and negligent misrepresentation, (3) gave the jury inaccurately framed interrogatories regarding the plaintiff's implied contract, tortious interference and negligent misrepresentation counts, (4) directed verdicts on the plaintiff's negligence, breach of implied contract, fraud, unjust enrichment and negligent misrepresentation counts against United Technologies, (5) concluded that United Technologies had not violated General Statutes § 31-71e, (6) induced the plaintiff to withdraw thirty-one counts of

[1] The plaintiff appeared pro se throughout all phases of this lawsuit and appeal.

[2] Except for the count alleging violation of General Statutes § 31-71e, which was tried to the trial court, the case was tried to a jury.

[3] The defendants were United Technologies Corporation, Roger Kuhn, Frederick Morris, Harry Garfinkel, Marlin Knight, Chris Poythress, Steve Mason, Frank McAbee and Tom Furtado. The action was withdrawn as against all but United Technologies Corporation, Kuhn and Morris. We refer in this opinion to those defendants as the defendants.

tortious allegations against six of the individual defendants and then refused to permit the plaintiff to rescind his withdrawal and permitted the defendants to present evidence of the plaintiff's history of litigation, (7) abused its discretion on evidentiary rulings and (8) failed to recuse itself and failed to grant the plaintiff's motion for a mistrial.

The following facts are relevant to this appeal. The plaintiff was an at-will employee working as a project engineer in the space and sea systems department of Hamilton Standard from 1980 until January 19, 1994. As an employee, the plaintiff participated in United Technologies' sponsored programs designed to give employees a forum in which to express their views and concerns, variously known as "Straight Talk," "DIALOG" and "All Hands." United Technologies employed ombudsmen to facilitate employee use of the forums.

Beginning in July, 1993, the plaintiff expressed his concern about certain management practices of Hamilton Standard and United Technologies executives during a number of such forums. The essence of his concern was that the poor economic climate of the time forecast budget reductions and layoffs. Despite this forecast, according to the plaintiff, senior executives were being rewarded enormous bonuses without regard to the fate of lower level United Technologies employees and without regard to the fact that the corporation accepted financial aid from the state of Connecticut. The plaintiff was also of the opinion that United Technologies was more concerned with short-term profits than long-term growth, the interests of its shareholders and the public good.

From November, 1993, through January, 1994, the plaintiff expressed his concerns to ombudsmen that he was going to be discharged for the opinions he expressed during the various forums. The plaintiff was

of the opinion that the president of Hamilton Standard, defendant Roger Kuhn, directed that the plaintiff was to be discharged. On January 19, 1994, the plaintiff was laid off from his job at Hamilton Standard, which was part of an overall reduction of 50 percent of the Hamilton Standard workforce in the early 1990s.[4] The plaintiff subsequently brought suit against United Technologies and eight of its employees. Additional facts will be identified as necessary.

I

The plaintiff first claims that the trial court improperly granted the defendants' motion to strike two counts of his complaint alleging wrongful discharge in violation of his right to free speech (count thirty-three) and wrongful discharge in violation of § 31-51q (count thirty-four). We disagree.

"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof. . . ." Practice Book § 10-39 (a).

The standard of review for granting a motion to strike is well settled. " 'In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Sassone* v. *Lepore*, 226 Conn. 773, 780, 629 A.2d 357 (1993); *Michaud* v. *Wawruck*, 209 Conn. 407, 408, 551 A.2d 738 (1988).' *Waters* v. *Autuori*, 236 Conn. 820, 822, 676 A.2d 357 (1996). A motion to strike admits all facts well pleaded. See Practice Book § [10-39]. A determination

---

[4] In the space and sea systems department, thirty-four of the 290 employees were laid off.

regarding the legal sufficiency of a claim is, therefore, a conclusion of law, not a finding of fact. Accordingly, our review is plenary. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)." *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). "Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). . . . *Knight* v. *F. L. Roberts & Co.*, 241 Conn. 466, 470–71, 696 A.2d 1249 (1997)." (Internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998).

## A

To review this claim, we must examine the complicated procedural history of this case. There were approximately nine iterations of the plaintiff's complaint. We will refer to the various revisions of the complaint by the relevant alphabetical identification assigned to them in the trial court.

The defendants moved to strike, among others, counts thirty-three and thirty-four of revision F. On June 14, 1995, the trial court, *Handy, J.*, granted the motion to strike by memorandum of decision. On August 4, 1995, the plaintiff filed a request to amend his complaint, including counts thirty-three and thirty-four.[5] The trial court, *Handy, J.*, granted the plaintiff permission to amend certain counts and paragraphs of his complaint

---

[5] Practice Book § 10-44 provides in relevant part: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading . . . ."

but not counts thirty-three and thirty-four. Nonetheless, that amendment became revision G, containing counts thirty-three and thirty-four. The defendants filed a motion dated August 18, 1995, seeking to strike certain counts of revision G, including counts thirty-three and thirty-four. On August 31, 1995, the trial court, *Handy, J.*, ruled from the bench, striking counts thirty-three and thirty-four of revision G and ordered the plaintiff not to replead those counts.[6]

In their brief and at oral argument before this court, the defendants contend that the plaintiff waived his right to raise the impropriety of the trial court's striking counts thirty-three and thirty-four of revision F by pleading over in revision G.[7] We disagree with the defendants because the procedural posture of this case is on point with the facts of *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 70–76.[8] The plaintiff has asked

[6] The record contains a copy of the trial court's memorandum of decision concerning the motion to strike counts in revision F. The plaintiff provided a copy of the transcript of the hearing at which the trial court granted the second motion to strike the counts from revision G. That transcript, however, is not signed by the trial court as required by Practice Book § 64-1. See also Practice Book § 10-43.

"While we have on occasion excused noncompliance with these rules; see *State* v. *Lawler*, 30 Conn. App. 827, 828 n.2, 622 A.2d 1040 (1993) (appellant did not furnish signed transcript containing trial court's oral decision, but between parties, complete copy of transcript filed); *Fiddelman* v. *Redmon*, 31 Conn. App. 201, 209 n.6, 623 A.2d 1064, cert. denied, 226 Conn. 915, 628 A.2d 986 (1993) (trial court did not issue written memorandum or transcribe and sign oral decision but did issue detailed statement of findings and conclusions); we have done so in those instances where the trial court's decision was sufficiently detailed and concise so that review of the appellant's claim was possible. Therefore, we do not 'exalt form over substance.' *State* v. *Rios*, 30 Conn. App. 712, 714, 622 A.2d 618 (1993)." *Singer* v. *Matto*, 48 Conn. App. 462, 465–66, 710 A.2d 823 (1998).

[7] Upon a careful review of the record, we determined that the defendants had filed a second motion to strike the subject counts, which was granted by the trial court, *Handy, J.*

[8] The defendants also argued that the plaintiff failed to preserve appellate review of the trial court's granting their motion to strike counts thirty-three and thirty-four of revision G by filing a notice of reservation of right to appeal within twenty days of the notice of the trial court's decision as

us to review the striking of counts thirty-three and thirty-four from revision G, not revision F.

1

In count thirty-three of revision F, wrongful termination, the plaintiff alleged, inter alia, that there is a public policy favoring United Technologies' compliance with a code of ethics for all major defense contractors. The code of ethics requires defense contractors to implement programs conducted by an ombudsman to encourage employees to express their opinions, attitudes and concerns without fear of retribution as a means of promoting honesty, reducing fraud in defense contracts, providing corporate self criticism and alternative dispute resolution. Revision F also alleges that the plaintiff participated in United Technologies' "Straight Talk" and "DIALOG" programs and that his participation was protected by the alleged public policy. Furthermore, in or around September, 1993, because of his participation in "Straight Talk" and "DIALOG," Kuhn retaliated against the plaintiff by issuing a directive to his subordinates to find a way to discharge the plaintiff. The plaintiff also alleges that he was, in fact, wrongfully discharged in retaliation for having participated in "Straight Talk" and "DIALOG" and that this discharge violated the public policy alleged.

The defendants moved to strike count thirty-three, and others, arguing that the count failed to state a claim on which relief may be granted because it alleged no recognized violation of public policy. The trial court, citing *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 679, 513 A.2d 66 (1986), granted the motion to strike count thirty-three because the plaintiff failed to allege

required by Practice Book § 61-2. The record reveals that the plaintiff filed a notice of reservation of appeal of those issues on September 5, 1995, which is within twenty days of the trial court's ruling on the motion to strike on August 31, 1995.

that his discharge violated a specific statutory or constitutional provision or contravened a judicially conceived notion of public policy.

The plaintiff amended his complaint in revision G to plead over count thirty-three and to add the allegations that he participated in "Straight Talk" and "DIALOG" at the request of his employer and that his participation in those programs was protected as a matter of public policy by General Statutes §§ 31-104[9] and 31-105[10] and

[9] General Statutes § 31-104 provides: "Employees shall have the right of self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choice and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from actual interference, restraint or coercion by employers."

[10] General Statutes § 31-105 provides in relevant part: "It shall be an unfair labor practice for an employer: (1) To spy upon or keep under surveillance, whether directly or through agents or any other person, any activities of employees or their representatives in the exercise of the rights set forth in section 31-104; (2) to prepare, maintain, distribute or circulate any blacklist of individuals for the purpose of preventing any of such individuals from obtaining or retaining employment because of the exercise by such individuals of any of the rights set forth in section 31-104; (3) to dominate or actually interfere with the formation, existence or administration of any employee organization or association, agency or plan which exists in whole or in part for the purpose of dealing with employers concerning terms or conditions of employment, labor disputes or grievances, or to contribute financial or other support to any such organization, by any means, including but not limited to the following . . . (4) to require an employee or one seeking employment as a condition of employment to reveal membership, past membership or nonmembership in a labor organization, either by the use of written application forms, questionnaires or oral inquiries, or to join any company union or to refrain from forming or joining or assisting a labor organization of his own choosing; (5) to encourage membership in any company union or discourage membership in any labor organization by discrimination in regard to hire or tenure or in any term or condition of employment, provided nothing in this chapter shall preclude an employer from making an agreement with a labor organization requiring as a condition of employment membership therein, if such labor organization is the representative of employees as provided in section 31-106; (6) to refuse to bargain collectively with the representatives of employees, subject to the provisions of said section 31-106; (7) to refuse to discuss grievances with representatives of employees, subject to the provisions of said section 31-106; (8) to discharge or otherwise discriminate against an employee because he has signed

represented an exercise of his constitutionally protected right to free speech. The defendants again moved to strike count thirty-three, which motion the trial court granted, stating: "It is this court's opinion that this is a reformulation of the old count which has been previously stricken by the court. It is not sufficient as it is pleaded to sustain a cause of action. I have said this before, and I repeat it again. Sections 31-104 and 31-105 of the Connecticut General Statutes, which are cited as statutory references, I believe, in an attempt to save it from my previous striking of this same count, are not applicable. They deal specifically with organizing unions in the workplace and unfair labor practice, which is not the situation here. Therefore, this is not a valid statutory basis for the violation of public policy."[11] The trial court did not address the constitutional right to free speech alleged by the plaintiff. The trial court also ordered the plaintiff not to replead his wrongful termination claim.

"As a general rule, [t]he filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . *P & L Properties, Inc.* v. *Schnip Development Corp.*, 35 Conn. App. 46, 49, 643 A.2d 1302, cert. denied, 231 Conn. 913, 648 A.2d 155 (1994); see also *Royce* v. *Westport*, 183 Conn. 177, 179, 439 A.2d 298 (1981); *Good Humor Corp.* v. *Ricciuti*, 160 Conn.

---

or filed any affidavit, petition or complaint or given any information or testimony under this chapter; (9) to distribute or circulate any blacklist of individuals exercising any right created or confirmed by this chapter or of members of labor organizations, or to inform any person of the exercise by any individual of such right, or of the membership of any individual in a labor organization for the purpose of preventing individuals so blacklisted or so named from obtaining or retaining employment; or (10) to do any acts other than those enumerated in this section which restrain, coerce or interfere with employees in the exercise of the rights set forth in section 31-104."

[11] Our review of the trial court's memorandum of decision previously striking count thirty-three makes no reference to the subject statutes.

133, 135, 273 A.2d 886 (1970)." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 74. Accordingly, if the allegations in the plaintiff's revision G were not materially different from those in revision F, the plaintiff could not now challenge the trial court's ruling striking the wrongful termination claim from revision G. See id.

In striking count thirty-three from revision F, the trial court emphasized that the plaintiff failed to allege that the discharge violated a specific statutory or constitutional provision or contravened a judicially conceived notion of public policy. In revision G, the plaintiff alleged in count thirty-three two statutory provisions and a constitutional right to free speech,[12] which were not alleged in revision F. Thus, the plaintiff's additional allegations may be read as attempting to address the legal insufficiency specifically identified by the trial court in striking the wrongful termination claim in revision F, making the count materially different. We conclude, therefore, that by pleading over, the plaintiff has not waived his right to appeal from the striking of count thirty-three of revision G.

2

Count thirty-four of revision F alleged wrongful discharge in violation of § 31-51q.[13] Specifically the plaintiff

---

[12] The plaintiff did not allege whether the right to free speech on which he relied is guaranteed by the United States or Connecticut constitution or both. We need not, however, concern ourselves with any distinction. Our Supreme Court, in interpreting the state constitutional free speech provision in the area of private speech on private property, has refused to find a meaningful distinction between the federal and state constitutional free speech provisions. See *Dydyn* v. *Dept. of Liquor Control*, 12 Conn. App. 455, 463, 531 A.2d 170, cert. denied, 205 Conn. 812, 532 A.2d 586 (1987), cert. denied, 485 U.S. 977, 108 S. Ct. 1272, 99 L. Ed. 2d 483 (1988).

[13] General Statutes § 31-51q provides: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the

alleged, among other things, that his participation in the "Straight Talk" and "DIALOG" programs was protected under § 31-51q because it was an exercise of his right to free speech. The defendants moved to strike that count arguing that count thirty-four failed to allege a cause of action because the subject speech was not protected by the statute, as the plaintiff's workplace speech and writings are internal complaints about managerial decisions and are not matters of public concern.

The trial court, in granting the defendants' motion to strike, agreed that the allegations of count thirty-four of revision F did not state a cause of action. The trial court ruled that, pursuant to the allegations, the plaintiff was not acting as a citizen opining about a matter of public concern but as an employee protesting the rumored sale of one of United Technologies' product lines and the bonuses received by senior management.

Again, the plaintiff repleaded his complaint adding the following allegations to count thirty-four. Revision G alleges that central among the plaintiff's themes in speaking out through "Straight Talk" and "DIALOG" was his concern as a citizen about management dishonesty and fraud that was harmful to employees, the government and taxpayers and that United Technologies managers were knowingly allocating government and taxpayer generated revenue and state aid for their personal gain, to the detriment of the state's economy.

Once more, the defendants moved to strike count thirty-four because the type of speech at issue does not

state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the cost of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

fall within the protection afforded by § 31-51q. The trial court again agreed with the defendants, stating that, regardless of the spin the plaintiff put on the allegations, they did not rise above the private nature of the employer-employee relationship.

To determine whether the plaintiff waived his right to challenge the trial court's striking of count thirty-four of revision G by pleading over after the striking of the count from revision F, we must determine whether there is a material difference between the two versions of the count. See *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 74. We conclude that in repleading count thirty-four, the plaintiff alleged that he was exercising his right to speak not just as a United Technologies employee concerned about managerial decisions but as a citizen concerned about fraud harmful to taxpayers and the government. The allegations of revision G are materially different and the plaintiff did not waive his right to appeal the striking of count thirty-four from revision G.

B

We now turn to the issue of whether the trial court properly granted the defendants' motion to strike counts thirty-three and thirty-four of revision G. The plaintiff claims that the trial court improperly granted the defendants' motion to strike count thirty-three, which alleged that United Technologies wrongfully discharged him for exercising his constitutional right to free speech in violation of §§ 31-104 and 31-105, presidential executive orders, congressional acts and federal regulations, and count thirty-four, which alleged that United Technologies wrongfully discharged him because his participation in "Straight Talk" and "DIALOG" was protected by § 31-51q. To determine whether the plaintiff is correct, we must examine the allegations of the plaintiff's revised complaint and the law set forth

in *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980), and its progeny.

"In *Sheets* v. *Teddy's Frosted Foods, Inc.*, [supra, 179 Conn. 480], in an effort to balance the competing interests of employers and employees, we recognized a public policy limitation on the traditional employment at-will doctrine. *Antinerella* v. *Rioux*, 229 Conn. 479, 492, 642 A.2d 699 (1994). In *Sheets*, we sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety . . . derived from some important violation of public policy. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra [475]; see *Morris* v. *Hartford Courant Co.*, [supra, 200 Conn. 679]; *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984). In *Morris* v. *Hartford Courant Co.*, supra, 680, we recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of the public policy exception. In evaluating claims, [w]e look to see whether the plaintiff has . . . alleged that his discharge violated any explicit statutory or constitutional provision . . . or whether he alleged that his dismissal contravened any judicially conceived notion of public policy. . . . *Antinerella* v. *Rioux*, supra, 492, quoting *Morris* v. *Hartford Courant Co.*, supra, 680. . . . *Faulkner* v. *United Technologies Corp.*, [supra, 240 Conn. 580–81]." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 76–77.

"[T]he public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one that is only to be invoked when the reason for [the employee's] discharge . . . involves impropriety derived from some important violation of a public policy. *Carbone* v. *Atlantic Richfield Co.*, 204 Conn. 460, 470, 528 A.2d 1137 (1987). We are mindful that courts should not lightly intervene to

impair the exercise of managerial discretion or to foment unwarranted litigation. *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477. Nevertheless, when there is a relevant state statute we should not ignore the statement of public policy that it represents. Id., 480." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, supra, 243 Conn. 79.

"We need not decide whether violation of a state statute is invariably a prerequisite to the conclusion that a challenged discharge violates public policy. Certainly when there is a relevant state statute we should not ignore the statement of public policy that it represents. . . . We did not, however, preclude the use of a federal statute to demonstrate that a discharge violated public policy." (Citation omitted; internal quotation marks omitted.) *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 583. In *Faulkner*, in concluding that violations of federal law were a proper basis for alleging a wrongful discharge claim, our Supreme Court cited numerous cases from other jurisdictions in which their courts identified federal statutes and regulations and constitutional provisions the violation of which contravened an important public policy for purposes of alleging a wrongful discharge claim. See id., 586–87.

1

To determine whether the plaintiff, here, has alleged facts sufficient to state that his discharge involved an impropriety derived from some important violation of public policy, we look to the allegations of count thirty-three in revision G. "We do so mindful of the well settled law regarding pleadings. [T]he interpretation of pleadings is always a question [of law] for the court . . . . *Cahill* v. *Board of Education*, 198 Conn. 229, 236, 502 A.2d 410 (1985). The modern trend, which is followed in Connecticut, is to construe pleadings

broadly and realistically, rather than narrowly and technically. . . . *Beaudoin* v. *Town Oil Co.*, 207 Conn. 575, 587–88, 542 A.2d 1124 (1988), and cases cited therein. Although essential allegations may not be supplied by conjecture or remote implication; *Cahill* v. *Board of Education,* supra, 236; the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. *Price* v. *Bouteiller,* 79 Conn. 255, 257, 64 A. 227 (1906). As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.,* supra, 243 Conn. 82–83. "Although the motion to strike admits all facts well pleaded, it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* 179 Conn. 541, 545, 427 A.2d 822 (1980); *Sheiman* v. *Lafayette Bank & Trust Co.,* 4 Conn. App. 39, 42, 492 A.2d 219 (1985); *Greene* v. *Metals Selling Corp.,* 3 Conn. App. 40, 41, 484 A.2d 478 (1984)." *Quimby* v. *Kimberly Clark Corp.,* 28 Conn. App. 660, 664, 613 A.2d 838 (1992).

Count thirty-three of revision G alleged in pertinent part that the plaintiff was an engineer employed in the space and sea systems department of the Hamilton Standard division of United Technologies. The work performed by the department was done almost exclusively pursuant to defense contracts. United Technologies has an ethics code with which all of its employees must comply. The code is committed to the highest standards of ethics and conduct of its employees, stockholders, the community and government associates. The code of ethics provides channels of communication that encourage freedom of speech relative to employee opinion and specifies that no retribution will be taken

against any employee for engaging in self-expression and open dialogue. The code of ethics was created to comply with presidential Executive Order No. 12,526, 3 C.F.R. 378–80 (1985), and 48 C.F.R. § 203.70 (1988), both of which dealt with defense contractor standards of conduct. The code of ethics supports an ombudsman program and employees are assured that their contributions are protected from retaliation.

Count thirty-three further alleges that in 1993, as an employee and good citizen, the plaintiff was concerned about management practices that he observed at United Technologies. The plaintiff perceived that United Technologies and its subsidiaries were being managed for near term profit at the expense of the employees, government, the state's economy and taxpayers. The alleged purpose of this management strategy was for immediate financial gain by senior managers. The plaintiff perceived these management practices as excessive, inappropriate, unprofessional, unethical, dishonest, fraudulent and detrimental to the plaintiff, his coworkers, United Technologies, the state's economy and the government. In the plaintiff's opinion, management, out of personal interest, was attempting to secure bonuses for themselves at the expense of corporate interest, the interests of employees and the public good. Count thirty-three also alleges that the plaintiff expressed his concerns about his perceptions as an employee and good citizen by exercising his constitutionally protected right to free speech as encouraged and invited by United Technologies. The plaintiff expressed his concerns orally at "Straight Talk" and in writing through the "DIALOG" program without interfering with his job performance or disrupting the workplace. The plaintiff also alleged that he was discharged as a result of expressing his views through the ethics programs and that as a result of his discharge he suffered damages and emotional distress.

Count thirty-three also includes the allegation that the plaintiff's participation in "Straight Talk" and "DIA-LOG" was protected as a matter of public policy because it was made pursuant to §§ 31-104 and 31-105 and in the exercise of constitutionally protected free speech.

The issue before us is whether the plaintiff's dismissal violated an important public policy derived from General Statutes §§ 31-104, 31-105 and 31-51q, 48 C.F.R. § 203.70 et. seq. (1988) or Exec. Order No. 12,526, 3 C.F.R. 378–80 (1985) or violated the plaintiff's constitutional right of free speech.

In ruling from the bench on the defendants' second motion to strike count thirty-three from revision G, the trial court stated that §§ 31-104 and 31-105 were inapplicable to the circumstances alleged in the plaintiff's complaint because those statutes apply to union organization and unfair labor practices. In striking count thirty-four, the trial court concluded that the plaintiff's speech was not protected by § 31-51q because the allegations of the count did not rise to the level beyond the private nature of the speech at issue. We agree with the trial court.

In *Faulkner* v. *United Technologies Corp.*, supra, 240 Conn. 587, our Supreme Court cited *Novosel* v. *Nationwide Ins. Co.*, 721 F.2d 894, 898–99 (3d Cir. 1983), in support of a growing trend among jurisdictions to find support for the tort of wrongful termination exception to the at-will employment rule in federal statutes and the constitution of the United States. In *Novosel*, the Court of Appeals for the Third Circuit vacated the United States District Court's granting, pursuant to rule 12 (b) (6) of the Federal Rules of Civil Procedure, of a motion to dismiss a wrongful termination claim predicated on public policies espoused by the first amendment to the United States constitution.[14] We therefore

---

[11] The plaintiff in *Novosel* disagreed with his employer's legislative agenda and refused to lobby the state legislature on his employer's behalf. *Novosel*

conclude that if the plaintiff here properly asserted a violation of the right to free speech based upon the first amendment, he could properly allege a cause of action for wrongful termination. For the following reasons stated, however, the plaintiff's expressions of his opinions at "Straight Talk" and "DIALOG" were not constitutionally protected free speech.

The plaintiff claims that to distinguish himself from the rule governing employee-employer relationships; see *Sheets* v. *Teddy's Frosted Foods, Inc.*, supra, 179 Conn. 477; he was acting as a concerned citizen when he expressed his opinions about managerial decisions being made at United Technologies. This allegation is a legal conclusion, not an allegation of fact. "The question of whether a particular statute . . . applies to a given state of facts is a question of statutory interpretation . . . . Statutory interpretation presents a question of law for the court." (Citation omitted; internal quotation marks omitted.) *Meadows* v. *Higgins*, 49 Conn. App. 286, 291, 714 A.2d 51, cert. granted on other grounds, 247 Conn. 910, 719 A.2d 904 (1998). When the plaintiff spoke, he was not exercising a right enjoyed by the general citizenry but was exercising a privilege granted him by his employer.[15] The forums alleged by the plaintiff were not open to the general public. The privilege that the plaintiff enjoyed was to express his concerns over the manner in which United Technologies was being operated. Indeed, the plaintiff's alleged expressions of concern were, for the most part, conclusive, not fact specific, and based on his perceptions of how United Technologies was managing its business. Such allegations are clearly distinguishable from *Sheets*

v. *Nationwide Ins. Co.*, supra, 721 F.2d 896. The plaintiff was subsequently discharged because of his refusal to support his employer's position.

[15] The plaintiff, in fact, admits, by way of allegation, that his speech was employee related in other counts of his complaint. See count thirty-three of revision I.

and *Faulkner* where the plaintiffs alleged they were discharged for refusing to follow employer directives to violate laws, which would have subjected them to criminal prosecutions.

2

The allegations of count thirty-four differ from the allegations of count thirty-three in that the plaintiff alleges a violation of § 31-51q rather than the alleged statutory allegations discussed previously. Section 31-51q "applies to some activities and speech that occur at the workplace because there are no words in the statute limiting the place at which the constitutionally protected activity occurs, there is no prohibition that prevents a legislature from protecting employee speech wherever it occurs and other legislation governing the same general subject matter includes speech occurring at the workplace. The real question in this case, however, is not governed by *where* the activity occurred but of *what* the activity consisted. Section 31-51q protects only that activity guaranteed safe from private employer interference by either certain sections of our constitution or by the federal constitution. If the rights exercised by the employee do not fall into the specified constitutional category, the statute cannot apply. Not all speech is guaranteed to be 'free.' " (Emphasis in original.) *Cotto* v. *United Technologies Corp.*, 48 Conn. App. 618, 628, 711 A.2d 1180, cert. granted, 245 Conn. 915, 717 A.2d 233 (1998).

"To be protected by the first amendment, 'the speech must be on a matter of public concern, and the employee's interest in expressing [himself] on this matter must not be outweighed by any injury the speech could cause' to employee relationships. *Waters* v. *Churchill*, 511 U.S. 661, 668, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994). Restrictions on employee-employer speech are more justified than restrictions on the speech of the public

at large. Id., 672." *Cotto* v. *United Technologies Corp.,* supra, 48 Conn. App. 630. Because the plaintiff's allegations concern the expression of his opinions as to perceived wrongdoing on the part of upper management at United Technologies, it is a matter between him and his employer and, thus, is not protected speech.[16]

## II

The plaintiff's second claim is that the trial court improperly charged the jury on the law of (1) implied contract, (2) tortious interference and (3) negligent misrepresentation. We consider all three of these claims to be inadequately briefed. " 'Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly.' (Internal quotation marks omitted.) *State* v. *Henderson,* 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). Our Supreme Court has stated that '[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief.' *Connecticut National Bank* v. *Giacomi,* 242 Conn. 17, 44–45, 699 A.2d 101 (1997)." *State Library* v. *Freedom of Information Commission,* 50 Conn. App. 491, 500, 717 A.2d 842 (1998). We, therefore, will not review the plaintiff's claims.

## III

The plaintiff also claims that the trial court improperly framed interrogatories for the jury regarding the plaintiff's (1) implied contract, (2) tortious interference and (3) negligent misrepresentation counts.[17] We disagree with the plaintiff's claims.

---

[16] We have reviewed presidential Executive Order No. 12,526, 3 C.F.R. 378–80 (1985) and 48 C.F.R. § 203.70 et seq. (1988) and conclude that they are concerned with fraud and dishonesty in government contracts, which the plaintiff has not alleged. Therefore, the executive order and the federal regulation are not applicable to the plaintiff's right to free speech.

[17] The plaintiff's statement of the issue also includes a claim that the trial court improperly charged the jury. The plaintiff did not brief this portion

" '[T]he use of interrogatories has long been accepted practice in this state . . . their use to avoid the implications of a general verdict has long been favored by this court.' *Gaulton* v. *Reno Paint & Wallpaper Co.*, 177 Conn. 121, 125, 412 A.2d 311 (1979)." *Hammond* v. *Waterbury*, 219 Conn. 569, 580, 594 A.2d 939 (1991). " '[A] trial court has broad discretion to regulate the manner in which interrogatories are presented to the jury, as well as their form and content.' *Hammer* v. *Mount Sinai Hospital*, [25 Conn. App. 702, 708, 596 A.2d 1318, cert. denied, 220 Conn. 933, 599 A.2d 384 (1991)]." *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 315, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995). "Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . *State* v. *Williams*, 195 Conn. 1, 8, 485 A.2d 570 (1985). . . . [*Hall* v. *Burns*, 213 Conn. 446, 455, 569 A.2d 10 (1990)]. In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. *State* v. *Weidenhof*, 205 Conn. 262, 278, 533 A.2d 545 (1987). *Curry* v. *Burns*, 33 Conn. App. 65, 69, 633 A.2d 315 (1993)." (Internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 92, 709 A.2d 14 (1998).

"Interrogatories should generally be few in number, and never so numerous as to confuse or perplex the

of his claim, and we therefore consider the issue abandoned. See *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 780 n.9, 720 A.2d 242 (1998).

In footnotes throughout this portion of his brief, the plaintiff also claims that the trial court improperly framed other interrogatories submitted to the jury. The footnotes lack legal analysis of the plaintiff's claims of improperly worded interrogatories. We will not, therefore, review the claims as they are not adequately briefed. See *PaineWebber, Inc.* v. *American Arbitration Assn.*, 217 Conn. 182, 189–90 n.12, 585 A.2d 654 (1991).

jury in rendering their verdict. They should be so clear and concise as to be readily understood and answered by the jury. Each question should call for a finding of but a single fact. When practicable each question should be so framed as to call for a categorical answer. Each question should ask for the finding of fact and never for a conclusion of law. No question should ask for the finding of a purely evidential fact nor an uncontroverted fact. Although not wholly covering, nor necessarily controlling, the determination of any issue framed, the fact sought to be elicited must be pertinent to some issue, and one which may be of material weight in deciding it. No interrogatory should be permitted, the response to which cannot serve either to limit or explain a general verdict, or aid in proceedings for a subsequent review of the verdict or judgment which may be rendered. *Hammer* v. *Mount Sinai Hospital,* supra, 25 Conn. App. 708–709." (Internal quotation marks omitted.) *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.,* supra, 39 Conn. App. 315–16.

"This court will not uphold interrogatories that misdirect the jury's attention and fail to give the jury adequate facts, because such misdirection is undeniably prejudicial, nor will this court uphold interrogatories that fail to direct the jury to other claims upon which the plaintiffs' claim was based. *Hartford* v. *Anderson Fairoaks, Inc.,* [7 Conn. App. 591, 597, 510 A.2d 200 (1986)]." *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.,* supra, 39 Conn. App. 315.

### A

The plaintiff's first set of claims as to improper interrogatories submitted to the jury concerns counts thirty-four and thirty-five of revision I, which alleged breach of an implied contract. To conduct our analysis, we must review the allegations of the plaintiff's complaint,

the evidence presented and the interrogatories that were submitted to the jury.

## 1

The plaintiff first claims that the trial court improperly limited the scope of interrogatory I. Count thirty-four of revision I purports to allege a claim of breach of implied contract for United Technologies' failure to promote the plaintiff. It alleges in relevant part that "[t]he plaintiff had an implied contract with his employer based upon his employer's written policies, procedures and manuals . . . as well as management statements, which established standards and procedures and generated expectations for his performance evaluation, peer group ranking and promotion. . . . The conduct of individual defendants, who acted unreasonably and in bad faith, caused a breach of the implied contract alleged . . . . The breach of the implied contract alleged . . . damaged the plaintiff in one or more of the following ways: (1) failure to be considered for promotion; and (2) failure to be promoted with a pay increase and (3) emotional distress."

To address the allegations of this count, the trial court submitted interrogatory I to the jury. The interrogatory asked: "Has the plaintiff . . . proved by a fair preponderance of the evidence that there was an implied contract between the plaintiff and the defendant United Technologies Corporation that entitled the plaintiff . . . to promotion from grade 46 to grade 48 on or about October, 1993?"

The plaintiff's objection is that the trial court improperly limited the interrogatory to whether the contract was breached because he was denied a promotion in October, 1993. The plaintiff claims that the jury should have been asked whether he was denied a process in which he would be considered for promotion based on his qualifications being fairly and equitably considered

relative to his peers. Our review of the trial transcript reveals that the only evidence presented by the plaintiff concerned whether he was promoted in October, 1993. The fact that the plaintiff was not promoted is, therefore, the only allegation in count thirty-four that could form the basis of the alleged breach of contract. As stated, the interrogatory properly framed the only relevant issue of fact for the jury to consider. The trial court, therefore, did not abuse its discretion.

2

The plaintiff next claims that the trial court improperly dictated the factual terms of an implied contract and reworded and misstated the plaintiff's complaint thereby making it impossible for the jury to find in his favor. Count thirty-five of revision I purports to allege a claim of breach of implied contract for United Technologies' terminating the plaintiff's employment. It alleges in relevant part that "the plaintiff had an implied contract with his employer based upon his employer's written policies, procedures and manuals . . . which established standards and procedures and generated expectations regarding termination and layoff. This implied contract, which he accepted by his continued employment, imposed a duty of good faith and fair dealing. . . . The plaintiff felt he had a written and verbal basis for an implied contract governing his employment termination from which he expected and understood as a minimum: (1) that layoffs would be decided by functional group managers based upon peer group ratings; (2) that his employment would not be terminated for participating in protected communications with management; and (3) [that] allegations of unacceptable conduct that might be grounds for discipline or dismissal would be brought to his attention and out of fairness he would be given a chance to reply to these allegations prior to any discipline or dismissal. . . . The conduct of the individual defendants, who

acted unreasonably and in bad faith, caused a breach of the implied contract alleged. . . . The breach of the implied contract alleged . . . damaged the plaintiff in one or more of the following ways: (1) by employment termination, and (2) emotional distress."

The trial court submitted interrogatory II, which asked: "Has the plaintiff . . . proved by a fair preponderance of the evidence that there was an implied contract between the plaintiff and the defendant United Technologies regarding employment termination and layoffs whereby: (a) employment layoffs would be solely decided by functional group managers based on group ranking; (b) the plaintiff . . . could not be discharged by reason of his participation in the DIALOG and Straight Talk programs, regardless of what he may have said therein or to whom he may have said it; and (c) allegations of unacceptable conduct by the plaintiff . . . that might be grounds for termination of his employment would be brought to his attention and that he would be given an opportunity to reply to such allegations prior to any termination of his employment?"

The plaintiff claims that the trial court improperly dictated the factual terms of the implied contract because count thirty-five, in the plaintiff's mind, alleged three independent, alternative bases on which the plaintiff *felt* a contract existed.[18] The terms of the implied contract alleged are pleaded in the conjunctive, not in the disjunctive. As pleaded, all of the terms of the contract, therefore, had to be found in order for the plaintiff to prevail. Interrogatory II is framed in three

---

[18] Furthermore, our rules of practice require fact pleading. See Practice Book § 10-1. Count thirty-five purports to sound in contract. By definition, a contract claim must allege a meeting of the minds of the parties. See *Sicaras* v. *Hartford*, 44 Conn. App. 771, 784, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). The plaintiff's mere's allegation that he *feels* certain things about the contract does not comport to fact pleading.

subparts to reflect accurately the allegations of count thirty-five.

The plaintiff claims that the trial court improperly inserted the word *solely* in subpart a of interrogatory II. Again, our review of the pleadings and the transcript indicates that the interrogatory, as framed by the trial court, was proper in that it conformed to the allegations and evidence.[19]

The plaintiff claims that the trial court improperly failed to include the words "out of fairness" in subpart c of interrogatory II, which words were alleged in count thirty-five. Our review of the complaint and the interrogatory as submitted to the jury leads us to the conclusion that the failure to include those words in the interrogatory did not misdirect the jury's attention from the factual determination that they were required to make. As stated, the interrogatory implies that fairness required that the plaintiff be given an opportunity to respond to allegations of unacceptable conduct. The trial court, therefore, did not improperly frame the interrogatory.

[19] The following colloquy took place between the plaintiff and the trial court concerning the interrogatories to be submitted to the jury.

"Plaintiff: Count 35, A, 1A. It says employment termination will be decided—solely decided by functional group managers based on peer group ranking.

"The Court: Yes?

"Plaintiff: Its layoffs would be solely decided—would be decided. Take out the word solely and change employment termination to layoffs. Layoffs would be decided by functional group managers based on group ranking.

"The Court: But isn't your claim that their determination was final? You're claiming that nobody higher up had any part in it.

"Plaintiff: My claim is that layoffs would be decided by functional group managers based on group ranking. That's my claim. We've already gone through evidence as far as employment termination could be based on performance, it could be based on layoffs, it could be based on discipline or it could be based on some other reason. I did not allege employment termination solely, based on functional group managers based on ranking. That's an entirely different subject. It was layoffs would be based or decided by functional group managers."

## B

The plaintiff's second set of claims as to improper interrogatories submitted to the jury concerns counts one and seven, which allege tortious interference with an employment relationship.[20] Again, to conduct our analysis, we must review the allegations of the plaintiff's complaint and the interrogatories that were submitted to the jury.

The allegations of count one state in relevant part that "the defendant Kuhn knew that the plaintiff was a United Technologies employee and that the defendant Kuhn intended to and did interfere with the plaintiff's employment relationship with United Technologies and the benefits derived from that relationship. In or around September, 1993, because of plaintiff's participation in Straight Talk and DIALOG and/or concerns and/or criticisms he expressed therein, Kuhn retaliated against plaintiff by issuing a directive to find a way to discharge plaintiff from Hamilton Standard and said directive was: (1) followed by subordinate staff . . . (2) in direct conflict with the United Technologies Code of Ethics . . . (3) violated the privileged and protected communications which the Straight Talk and DIALOG programs represented under the ombudsmen and which all United Technologies employees had a duty to United Technologies and the plaintiff to follow. . . ."

Count seven alleges substantially the same facts except that it is directed to Morris and contains the following allegation that "the defendant Morris was under a directive by the defendant Kuhn, or subordinate staff member, to find a way to discharge plaintiff which defendant Morris knew was in retaliation for plaintiff's participation in Straight Talk and/or DIALOG."

[20] The allegations of count one are directed toward the defendant Kuhn and the allegations of count seven are directed toward the defendant Morris.

To address the allegations of both counts one and seven, the trial court submitted interrogatory III to the jury. The interrogatory stated: "You should only answer the questions in this Section III if you have determined that the plaintiff . . . has met his burden of proving the implied contract as set forth in Count 35 and you have entered your verdict for the plaintiff on Count 35. If the plaintiff . . . has not met his burden of proof, you must enter your verdict for the defendant [Kuhn] on Count 1 and for the defendant [Morris] on Count 7. If the plaintiff . . . has met his burden and you have entered your verdict on Count 35 for the plaintiff . . . then answer the following questions with respect to Counts 1 and 7."

The plaintiff argues that the trial court improperly ruled that tortious interference with employment is identical to tortious interference with a contract for termination and required the jury to find that there was an implied contract for termination, i.e., count thirty-five. "The elements of tortious interference are the existence of a contractual or beneficial relationship, the defendants' knowledge of that relationship, the intent to interfere with it, and the consequent actual loss suffered by the plaintiff." *Hart, Nininger & Campbell Associates, Inc.* v. *Rogers*, 16 Conn. App. 619, 629, 548 A.2d 758 (1988). Because there must be a contractual relationship in this case to sustain the plaintiff's cause of action for tortious interference, the trial court did not improperly submit interrogatory III to the jury.

C

The plaintiff's third claim as to improper interrogatories submitted to the jury concerns count forty of revision I, which alleged negligent misrepresentation. The plaintiff's brief contains no legal analysis of this claim. We, therefore, decline to review it. See *State Library* v.

*Freedom of Information Commission,* supra, 50 Conn. App. 500; *State* v. *Henderson,* supra, 47 Conn. App. 558.

## IV

The plaintiff next claims that the trial court improperly directed verdicts on the plaintiff's negligence, breach of implied contract, fraud, unjust enrichment and negligent misrepresentation counts against United Technologies.[21] We are not persuaded.

"The rules controlling appellate review of a directed verdict are well settled. Directed verdicts are not generally favored. A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . *Mallinson* v. *Black,* 41 Conn. App. 373, 380–81, 675 A.2d 937 (1996)." (Internal quotation marks omitted.) *Ciarlelli* v. *Romeo,* 46 Conn. App. 277, 282, 699 A.2d 217, cert. denied, 243 Conn. 929, 701 A.2d 657 (1997). "While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury. . . . *DiDomizio* v. *Frankel,* 44 Conn. App. 597, 600, 691 A.2d 594 (1997)." (Internal quotation marks omitted.) *Sheridan* v. *Desmond,* 45 Conn. App. 686, 691, 697 A.2d 1162 (1997). "While our Supreme Court has acknowledged that litigants have a constitutional right to have issues of fact decided by the jury and not by the court; *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1954); it has also recognized that [w]hile the direction

---

[21] Respectively, these were counts thirty-three, thirty-six, thirty-eight, thirty-nine and forty-one of revision I of the plaintiff's complaint.

of a verdict is not favored, it is justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered . . . and if, had the verdict been rendered for the other party, the evidence was so weak that it would be proper for the court to set it aside. . . . *Lurier* v. *Danbury Bus Corp.*, 144 Conn. 544, 547, 135 A.2d 597 (1957)." (Internal quotation marks omitted.) *Parker* v. *Shaker Real Estate, Inc.*, 47 Conn. App. 489, 492–93, 705 A.2d 210 (1998).

The plaintiff claims that there was sufficient evidence presented at trial for the jury to be permitted to decide the factual issues, and he cites evidence presented at trial. In support of this claim, the plaintiff argues that these same facts were sufficient to oppose successfully the defendants' prior motion for summary judgment. The plaintiff fails, however, to appreciate the difference between a summary judgment and a directed verdict. When opposing a motion for summary judgment, the plaintiff need demonstrate only that there are genuine issues of material fact; see Practice Book § 17-49; to be determined by the trier of fact. To oppose a motion for summary judgment successfully, the plaintiff need demonstrate only that one material fact is in dispute. See *Connell* v. *Colwell*, 214 Conn. 242, 251, 571 A.2d 116 (1990). At trial, however, the plaintiff must prove every necessary fact to prevail. If a plaintiff fails to present evidence on even one of the elements necessary to prevail, the trial court may properly direct the verdict. See *Boehm* v. *Kish*, 201 Conn. 385, 389, 517 A.2d 624 (1986). Such are the circumstances presented by the facts before us in this case.

A

In count thirty-three, the plaintiff alleged, among other things, that all United Technologies employees were required to comply with its code of ethics, and

that pursuant to the code of ethics United Technologies and its employees had a duty to treat the plaintiff fairly in all aspects of his employment, provide open lines of communication, follow established guidelines for promotion, development and discharge, and respect protected communication made through the ombudsman. The plaintiff also alleged that United Technologies, through its agents, the individual defendants, negligently breached its duty to the plaintiff by retaliating against him for expressing his employee related concerns and by failing to investigate his claim that he was targeted for wrongful discharge in retaliation for expressing those employee related concerns. Finally, the plaintiff alleged that as a proximate cause of the defendants' negligent breach, he suffered damages.

"The existence of a duty of care is an essential element of negligence. E.g., *Frankovitch* v. *Burton*, 185 Conn. 14, 20, 440 A.2d 254 (1981). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 375, 441 A.2d 620 (1982). The plaintiff, who acknowledged that he was an at-will employee, attempted to bootstrap a negligence claim by alleging, in count thirty-five, an implied contract claim created by the United Technologies code of ethics.

The trial court properly recognized that United Technologies had no duty to comply with its code of ethics, unless the code of ethics constituted an implied employment contract. Because the jury rendered a defendants' verdict on count thirty-five, as a matter of law, the plaintiff failed to prove negligence as alleged in count thirty-three because the essential element of a duty of care was missing. See *Frankovitch* v. *Burton*, supra, 185

Conn. 20. The trial court, therefore, properly directed a verdict on count thirty-three.

## B

At the conclusion of trial, the defendants filed a motion for a directed verdict, which included counts thirty-six, thirty-eight, thirty-nine and forty-one. In the motion, the defendants set forth the elements of each cause of action, the evidence presented at trial and identified what evidence was missing. The defendants argued that the counts were redundant. The trial court granted the defendants' motion with respect to these counts. In his brief before this court, the plaintiff merely asserts facts that he believes sustain his various causes of action, but he fails to cite rules of law in support of his position.[22] We cannot review this claim without the benefit of the plaintiff's legal analysis of the various issues. See *New London Federal Savings Bank* v. *Tucci-arone*, supra, 48 Conn. App. 100–101.

## V

The plaintiff's fifth claim is that the trial court improperly concluded that United Technologies did not violate § 31-71e.[23] This count was severed from the jury claims and tried to the court, which found in favor of the defendants in a memorandum of decision. The trial

[22] We are mindful of the fact that the plaintiff appeared before us pro se. Even pro se litigants, however, must provide this court with citations to rules of law that support their arguments. See *Cersosimo* v. *Cersosimo*, 188 Conn. 385, 394, 449 A.2d 1026 (1982); *Connecticut Light & Power Co.* v. *Kluczinsky*, 171 Conn. 516, 520, 370 A.2d 1306 (1976); *Higgins* v. *Hartford County Bar Assn.*, 109 Conn. 690, 692, 145 A. 20 (1929).

[23] General Statutes § 31-71e provides: "No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the commissioner, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book."

court concluded that, on the basis of a facial reading of § 31-71e, United Technologies was empowered by state law to reduce the plaintiff's base salary and that, by definitional and case law analysis, the plaintiff was not entitled to compensation during the furloughs, and, thus, any money withheld was not wages. We agree with the trial court.

The following facts are relevant to this claim. The plaintiff was a salaried employee with a base salary paid semimonthly. In the spring of 1993, United Technologies issued the first of several notices to its employees informing them that the corporation would implement a furlough program affecting all salaried and hourly employees, which consisted of nine furlough days in 1993 and five furlough days in 1994. The furlough program resulted in the reduction of the base salaries of all employees, including the plaintiff. The reduced salary was the basis for determining an employee's state and federal taxes.

In count forty-two of revision I, the plaintiff alleged that United Technologies added a standard deduction on his semimonthly earnings statement beginning in May, 1993. Furthermore, the plaintiff alleges that § 31-71e makes it illegal for an employer to withhold any portion of an employee's salary unless certain conditions enumerated in that statute are met. The plaintiff sought compensatory damages, punitive damages and attorney's fees pursuant to General Statutes § 31-72. The plaintiff further claims that the reduction in salary violated federal law, specifically 29 C.F.R. § 541.118 (a) (1998) and 29 U.S.C. § 201. The trial court fashioned the issue presented by the plaintiff as whether the payment of less than the full salary of an at-will salaried employee, as a result of United Technologies' participation in the Shared Work Pilot Program,[24] constituted

[24] The Shared Work Pilot Program permits an employer to implement a work hour reduction for all of its employees or a designated group of employees, in lieu of laying off an equivalent percentage of employees.

the "withholding" or "diversion" of a portion of the employee's pay in violation of § 31-71e. The trial court concluded that the furlough program did not violate § 31-71e.

In his brief, the plaintiff takes issue with the trial court's factual findings and legal conclusion. The plaintiff did not, however, provide this court with any law or legal analysis to support his claim.[25] We, therefore, decline to review the claim. See *State Library* v. *Freedom of Information Commission*, supra, 50 Conn. App. 500.

## VI

The plaintiff's sixth claim is that the trial court improperly induced him to withdraw thirty-one counts of tortious allegations against six of the individual defendants for the purpose of avoiding cross-examination of his history of litigation as it related to his claim for emotional distress, refused to permit the plaintiff to rescind his withdrawal and nonetheless permitted the defendants to cross-examine him about his past litigation. We disagree.

The following facts are relevant. In the relevant counts of revision I, the plaintiff alleged that he suffered emotional distress as a direct and proximate result of the tortious acts of the individual defendants and United Technologies. The plaintiff sought to exclude the defendants from putting his history of litigation, most of which occurred in the mid-1980s,[26] in evidence. The defendants wanted to put the plaintiff's litigation history in evidence because the plaintiff had also claimed that the defendants in the prior suits also caused him emotional distress. Furthermore, a number of the counts of the plaintiff's complaint were redundant.

---

[25] See footnote 22.

[26] The litigation resulted from the plaintiff's divorce and suits he subsequently initiated against various lawyers, physicians and judges.

The trial court and the defendants had repeatedly asked the plaintiff to reduce the number of counts in the complaint and to narrow the issues for trial. The plaintiff asked the trial court to assure him that, if he withdrew his claims against the individual defendants, no evidence concerning his history of litigation would become evidence. The trial court would not make that assurance unless the plaintiff withdrew all counts alleging emotional distress. The plaintiff was reluctant to withdraw all of his tort claims because he wanted to preserve his damages claim for pain and suffering, which he could not plead as damages for breach of contract. The plaintiff eventually withdrew all his tort claims against the individual defendants. He did not withdraw count forty alleging negligent misrepresentation against United Technologies, which did allege emotional distress. The defendants did cross-examine the plaintiff about his prior litigation concerning emotional distress because it was part of the negligent misrepresentation cause of action against United Technologies. Thereafter, the plaintiff attempted to rescind his withdrawal of his tort claims against the individual defendants. The trial court refused to let him do so.

On appeal, the plaintiff has identified nine issues of impropriety on behalf of the trial court with respect to this claim.[27] None of the issues is more than a single

[27] The plaintiff claims: "(1) The court's role was to try the case and encourage settlement, not to relentlessly pressure pro se withdrawal without consideration; (2) The court observed plaintiff should consult with an attorney, then wrongfully ignored its own advice and accepted a massive withdrawal without consideration; (3) A pro se should have been permitted to rescind withdrawal filed next court day. . . . (4) Informing the jury of a massive withdrawal (not a settlement), without permitting explanation, prejudicially implied plaintiff had a weak case. (5) Examination on past litigation was contrary to implied judicial assurances such evidence would not be allowed—the basis for withdrawal—so there was absolutely no consideration to plaintiff; (6) Examination on past litigation was unduly and extraordinarily prejudicial beyond any probative value, and it was irrelevant to the matters to be tried and/or its prejudicial nature substantially outweighed any probative value. . . . (7) Because the trial was bifurcated, proof of

assertion of wrongdoing without legal analysis. Therefore, we will not review the claim.[28] See *State Library* v. *Freedom of Information Commission*, supra, 50 Conn. App. 500.

## VII

The plaintiff's seventh claim is that the trial court improperly abused its discretion with regard to its evidentiary rulings.[29] Specifically the plaintiff claims the trial court improperly (1) issued a protective order prohibiting the plaintiff from conducting discovery for more than one year and case-related communication with United Technologies employees, (2) violated the plaintiff's due process rights by prohibiting him from recalling himself to testify in order to rebut the testimony of adverse witnesses during his case-in-chief, (3) excluded hearsay testimony, (4) excluded testimony from United Technologies employees that the plaintiff's being laid off was wrongful, unethical or violated the layoff process and (5) refused to permit discovery of certain individual United Technologies employees. Again, the plaintiff has done no more than make bold assertions of wrongdoing on the part of the trial court without identifying the applicable rule of law and providing this court with a comprehensive analysis of the facts and law.[30] We will not, therefore, review the claim. See *New London Federal Savings Bank* v. *Tucciarone*, supra, 48 Conn. App. 100–101.

damages and mitigating evidence is not required during the liability phase; (8) There was no testimony on direct by plaintiff of emotional distress (saving it for damages), so it was not allowed on cross-examination. When plaintiff attempted to recall himself to testify as to emotional distress, it was denied by the court! (9) The withdrawals removed alternative sources of relief for plaintiff." (Citations omitted.)

[28] See footnote 22.

[29] We note that one of the claimed improprieties concerns discovery, not evidence.

[30] See footnote 22.

## VIII

The plaintiff's final claim is that the trial court improperly failed to recuse itself or grant a mistrial.[31] The crux of the plaintiff's claim is that the trial court was more than a neutral arbiter because it encouraged the plaintiff to withdraw his tort claims against the individual defendants and solicited the assistance of the presiding judge to speak with the plaintiff during trial. We do not agree.

The following facts, which we gleaned from our reading of the transcript and the record, are necessary for our resolution of this claim. This case was tried over the course of ten weeks under circumstances in which the plaintiff chose to represent himself in a complex action for wrongful termination. At the beginning of trial, revision I consisted of forty-four counts, many of which were repetitious. To assist the plaintiff's presentation of evidence, the trial court bifurcated the liability and damages portions of the case. The plaintiff wanted his history of litigation precluded from evidence. The trial court took pains to explain to the plaintiff that because he alleged that the defendants caused him emotional distress and because he had previously sued other individuals claiming they, too, had caused him emotional distress, the defendants were entitled to cross-examine him about his emotional distress claims as they related to his prior litigation.

The plaintiff alleged that one of the individual defendants had slandered him by calling him vindictive. Although the word vindictive is contained in the revised complaint in the court's file, the plaintiff claimed to have stricken the word from his own copy of the complaint. The trial court permitted the plaintiff to withdraw the word vindictive over the objections of the

---

[31] The law cited by the plaintiff relates only to the issue of the trial court's recusing itself. Therefore, we will not address the issue of the trial court's improperly failing to grant a mistrial.

defendants, who had already cross-examined the plaintiff on the history of his vindictive litigation.[32] Both parties argued that they were prejudiced by the trial court's permitting the plaintiff to withdraw the vindictive allegation.

The trial court carefully explained to the plaintiff why it could not guarantee that the defendants would not be able to present evidence of his extensive history of litigation. The trial court asked the presiding judge to speak with the plaintiff to explain to him the benefit of withdrawing the tort claims against the individual defendants because they contained allegations of emotional distress, which the presiding judge did. The plaintiff claimed he was pressured into withdrawing the tort claims against the individual defendants without compensation and that the trial court improperly refused to let him rescind his withdrawal. On appeal, the plaintiff also takes exception to any ruling or action of the trial court that he perceives as being partial.

"It is a fundamental principle that to demonstrate bias sufficient to support a claim of judicial disqualification, the due administration of justice requires that such a demonstration be based on more than opinion or conclusion." (Internal quotation marks omitted.) *LaBow* v. *LaBow*, 13 Conn. App. 330, 340, 537 A.2d 157, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). "The controlling standard is whether a reasonable person who is aware of all the circumstances surrounding the judicial proceeding would question the judge's impartiality." (Interal quotation marks omitted.) *Lo Sacco* v. *Young*, 20 Conn. App. 6, 12, 564 A.2d 610, cert. denied, 213 Conn. 808, 568 A.2d 793 (1989).

---

[32] The defendants asserted by way of special defense that the plaintiff was vindictive, which if true, is an absolute defense to the slander claim. See *Goodrich* v. *Waterbury Republican-American, Inc.*, 188 Conn. 107, 113, 448 A.2d 1317 (1982).

We conclude, on the basis of our review of the transcript and the trial court's rulings, that the trial court was extraordinarily evenhanded in assuring that all parties adhered to the rules of practice that guide the course of litigation in our trial court. We conclude, therefore, that the trial court appropriately took into account the pro se status of the plaintiff and properly denied the plaintiff's motion for recusal.

The judgment is affirmed.