[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#102)
Presently, before the court is defendants' motion to strike Counts One, Two, Three and Four of plaintiff's complaint. Said motion should be granted as to each count.
It is not disputed that the plaintiff, Karen Buccini, was an at will employee of the defendants, Eastern Equipment Sales, Inc. and L.G. Defence, Inc. The plaintiff filed a four count complaint on April 25, 2001, alleging in the first count that she was terminated without cause and for the sole purpose of retaliating against her for reporting abuses by the division manager, Laure Casler, to the defendant's (L.G. DeFence, Inc.) controller. The plaintiff alleges that Casler engaged in several abuses including "misuse of company time, payment for non-authorized vacation and personal time, failure to pay bills resulting in phones being shut off and similar abuses of his position, which were directly affecting the day-today operations of the business."
The plaintiff alleges intentional infliction of emotional distress in the second count of the complaint. In the third count she alleges a claim for negligent infliction of emotional distress. In the fourth count the plaintiff alleges that her termination violated both General Statutes § 31-51q and her constitutional right to freedom of speech.
On July 27, 2001, the defendants filed a motion to strike the plaintiff's complaint and a memorandum of law in support of their motion. On September 10, 2001, the plaintiff filed a memorandum in opposition to the defendants' motion to strike. On March 27, 2002, the defendants filed a reply memorandum in support of their motion to strike the complaint.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.)Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270,709 A.2d 558 (1998). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff." (Internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 580, 693 A.2d 293 (1997). "A motion to strike is properly CT Page 10050 granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted.) NovametrixMedical Systems, Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25
(1992). "[F]or the purpose of a motion to strike, the moving party admits all facts well-pleaded." RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 383 n. 2, 650 A.2d 153 (1994). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged." (Citation omitted; internal quotation marks omitted.) Lombard v. Edward J. Peters, Jr., P.C.,252 Conn. 623, 626, 749 A.2d 630 (2000).
Count One
The defendants move to strike the first count of the plaintiff's complaint "alleging termination in retaliation for performing plaintiff's duties and without cause, because Connecticut does not recognize such cause of action." The defendants do not cite to any case law to support this ground in their July 27, 2001 memorandum of law. In the defendant's reply memorandum, however, the defendants argue more specifically that the plaintiff has failed to allege wrongful discharge in violation of an important public policy and thus count one is legally insufficient under the holding of the Supreme Court in Burnham v. Karl Gelb, P.C.,252 Conn. 153, 745 A.2d 178 (2000); Morris v. Hartford Courant Co.,200 Conn. 676, 513 A.2d 66 (1986); Magnan v. Anaconda Indus., Inc.,193 Conn. 558, 479 A.2d 781 (1984); Sheets v. Teddy's Frosted Foods,Inc., 179 Conn. 471, 427 A.2d 385 (1980).
The plaintiff, citing to Sheets v. Teddy's Frosted Foods, Inc., supra, argues in opposition to the defendants' motion to strike that Connecticut does recognize a cause of action for wrongful discharge in an employment at will situation when a public policy issue is involved and that she "properly alleges facts sufficient to state that her discharge constituted a wrongful termination in violation of public policy against retaliatory discharge."
"In Sheets . . . this court recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy."Burnham v. Karl Gelb, P.C., supra, 252 Conn. 159; see also Morris v.Hartford Courant Co., supra, 200 Conn. 681 ("[I]n order for a wrongful discharge action to lie properly in an employment at will situation, the termination must be based upon `some important violation of public policy.'"). The court in Sheets noted that the issue in wrongful discharge cases is "where and how to draw the line between claims that genuinely CT Page 10051 involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not"; Sheets, supra,179 Conn. 477; for "courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Id.
Plaintiff fails to allege facts to support a claim that her termination was in violation of public policy. In the present case, the plaintiff alleges in her first count that she was wrongfully discharged and fired without just cause based on grounds that were false. The plaintiff further alleges that she was fired in retaliation for promoting the interest of the company by reporting the abuses of Casler to management. The plaintiff in the present case, like the plaintiff in Morris v.Hartford Courant Co., supra, "has failed to identify any particular public policy affronted by [her] termination. Given the inherent vagueness of the concept of public policy, it is often difficult to define precisely the contours of the exception. Nevertheless, the plaintiff has not alleged that [her] discharge violated any explicit statutory or constitutional provision. Nor has [she] alleged that [her] dismissal contravened any judicially conceived notion of public policy." Morris v.Hartford Courant Co., supra, 200 Conn. 680. Plaintiff's allegations in the present case do not rise to a public policy concern; therefore, the motion to strike the first count should be granted.
Count Two
The defendants move to strike the second count of the plaintiff's complaint alleging intentional infliction of emotional distress on the ground that the plaintiff fails to plead sufficiently extreme and outrageous behavior. The defendants argue that the plaintiff's allegations do not satisfy the requirements for a claim of intentional infliction of emotional distress. The defendants further argue that to show extreme or outrageous conduct the plaintiff must allege that the defendants' actions were more than unfair or unpleasant.
The plaintiff argues that she has pleaded the elements of intentional infliction of emotional distress in count two. In support of her opposition, however, the plaintiff cites to case law that addresses issues raised in a motion for summary judgment. The motion presently before this court is a motion to strike, and the court's concern is the legal sufficiency of the pleadings, not whether the defendant's alleged extreme and outrageous conduct is a question to be decided by the jury and inappropriate on a motion for summary judgment, as argued by the plaintiff.
Four elements must be pleaded to establish a cause of action for CT Page 10052 intentional infliction of emotional distress. Appleton v. Board ofEducation, 254 Conn. 205, 210, 757 A.2d 1059 (2000). "It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Id. "Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Id., 210-11. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." Id., 210.
The plaintiff incorporates paragraphs 1-12 of the first count in count two to support her claim that the defendants' conduct was extreme and outrageous. Those counts, in summary, allege that she was fired without just cause on false grounds and in retaliation for discussing the abuses of Casler. In paragraph 13, the plaintiff alleges that the defendants intended their actions to inflict emotional distress on the plaintiff and in paragraph 14 that "[t]he conduct of the Defendant was extreme and outrageous." These allegations are not sufficient to support the allegation that the defendants' conduct was extreme and outrageous, that it exceeded the bounds of decency and should not be tolerated by a civilized society. The plaintiff therefore has pleaded only legal conclusions that are not supported by any factual allegations. Accordingly, the defendant's motion to strike the second count should be granted.
Count Three
The defendants move to strike the third count of the plaintiff's complaint alleging negligent infliction of emotional distress on the ground that the plaintiff fails to plead unreasonable conduct during the plaintiff's termination. The defendants rely on Parson's v. UnitedTechnologies Corp., 243 Conn. 66, 700 A.2d 655 (1997), in support of their argument that in order to maintain a cause of action for negligent infliction of emotional distress, the termination itself must be unreasonable. CT Page 10053
The plaintiff argues in response that the actions taken by the defendants in terminating the plaintiff were unreasonable. The plaintiff cites to the allegation in her complaint that she suffered embarrassment and humiliation as a result of her termination. The plaintiff further argues that she alleges in her complaint that the defendants knew or should have known that their conduct would cause emotional distress to the plaintiff.
"[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Parsons v.United Technologies Corp., supra, 243 Conn. 88. "Parsons stands for the proposition that a wrongful termination is not, in and of itself, a sufficient basis for a claim of negligent infliction of emotional distress." Perodeau v. Hartford, 259 Conn. 729, 750, 792 A.2d 752
(2002).
In the third count of the plaintiff's complaint, the plaintiff incorporates paragraphs 1-14 of count two and then alleges in paragraph 15 that the defendants knew or should have known that their conduct would cause the plaintiff to suffer from emotional distress. In paragraph 6, the sole allegation in the plaintiff's complaint relating to the termination process, the plaintiff alleges only that she was terminated "without cause and for the sole purpose of retaliating against her. . . ." The plaintiff has failed to allege any facts from which it could be found that the defendants' conduct was unreasonable during the actual termination process. Accordingly, the motion to strike the third count should be granted.
Count Four
The defendants move to strike the fourth count of the plaintiff's complaint on the ground that the plaintiff fails to state a claim for either a violation of General Statutes § 31-51 q or the plaintiff's constitutional right to freedom of speech, because complaints about company policies are not protected speech. The defendants do not cite to any case law in support of this ground in their July 27, 2001 memorandum. In the defendants' reply memorandum, however, they cite toLowe v. Amerigas, 52 F. Sup.2d 349, 359 (D.Conn. 1999), in support of their argument that the plaintiff fails to plead that she (1) was exercising a right protected by the first amendment of the United States Constitution and (2) and that the exercise of this right did not substantially interfere with her job performance, necessary allegations for both her constitutional claim and statutory claim under § 31-51q. CT Page 10054
The plaintiff argues that she has pleaded a cause of action under § 31-51q. The plaintiff appears to argue that an issue of fact exist concerning whether the plaintiff's actions in reporting Casler's abuses rise to a public concern or constitute a personal grievance. Again, the arguments made in plaintiff's memorandum in opposition are arguments appropriate to a summary judgment motion. The question before the court, however, is whether the plaintiff has pleaded sufficient facts to support her claim of a violation of both General Statutes § 31-51q and her constitutional right to freedom of speech.
"Section 31-51q protects from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern." Daley v.Aetna Life Casualty Co., 249 Conn. 766, 776, 734 A.2d 112 (1999). "[A] statute that protects constitutional rights in the workplace should not be construed so as to transform every dispute about working conditions into a constitutional question. . . . The statute [31-51q] applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen." Cotto v. UnitedTechnologies Corporation, 251 Conn. 1, 17, 738 A.2d 623 (1999). Id. "Section 31-51q protects only that activity guaranteed safe from private employer interference by either certain sections of our constitution or by the federal constitution. If the rights exercised by the employee do not fall into the specified constitutional category, the statute cannot apply. Not all speech is guaranteed to be free." Emerick v. Kuhn,52 Conn. App. 724, 743, 737 A.2d 456, cert. denied, 249 Conn. 929,738 A.2d 653 (1999). In Emerick, the Appellate Court ruled that "the plaintiff's allegations [to support his claim of wrongful discharge for having exercised his right to free speech during an employer sponsored forum] concern the expression of his opinions as to perceived wrongdoing on the part of upper management at United Technologies . . . a matter between him and his employer and, thus . . . not protected speech." Id., 744.
The plaintiff alleges that her termination was in violation of either § 31-51q or her constitutional right to free speech. The plaintiff incorporates all paragraphs from the previous three counts in support of her allegation. In paragraph 5, the plaintiff alleges that she was terminated for "discussing [Caster's] abuses to the appropriate supervisor." In paragraph 8, the plaintiff alleges that she was fired for promoting the interests of the company. Similar to the conclusion reached in Emerick, the plaintiff's conduct of informing management of the alleged wrongdoings on part of Casler in the present case does not amount to protected speech. Therefore, the fourth count of the plaintiff's complaint should be stricken. CT Page 10055
Accordingly, the motion to strike Counts One, Two, Three and Four of the complaint is granted.
 __________________________ Ronald J. Fracasse, Judge